James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

*Counsel for Plaintiff and the Proposed Class*
*(Additional Counsel on Signature Page)*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON MANIER, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiff,*<br><br>　　v.<br><br>TRIPLELIFT INC., a New York corporation.<br><br>　　　　*Defendant.* | Case No.: 5:25-cv-03223-SSS-DTB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TRIPLE LIFT, INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Date: April 3, 2026**<br>**Time: 2:00 p.m.**<br>**Courtroom 2**<br><br>**Hon. Sunshine S. Sykes** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………….…….…ii

INTRODUCTION…………………………………………………………………1

FACTUAL BACKGROUND………………..……………………...………....2

ARGUMENT………………………………………………………………....3

    A. Plaintiff adequately alleges her privacy claims (invasion of privacy and intrusion upon seclusion)……………………………………………………….…4

       1.  The CCPA Does Not Foreclose Plaintiff's Privacy Claims………...……4

       2.  Plaintiff Alleges a Reasonable Expectation of Privacy……….…..…...4

       3.  TripleLift Has Not Met Its Burden to Show Plaintiff Consented and Its Request for Judicial Notice Should be Denied………………...…………7

       4.  TripleLift's Conduct Is Highly Offensive…..…………………………9

    B.  Plaintiff States a CIPA Wiretapping Claim Under Section 631..…..………..…10

       1.  Plaintiff Alleges TripleLifts Willful Actions……………….……...……..10

       2.  Plaintiff Alleges that TripleLift "Acquired the Contents" of Her Communications…………………………………………………………11

       3.  Plaintiff's Communications Were Intercepted While in Transit…………11

    C.  Plaintiff Adequately States a CIPA Pen Register Claim………………….…...12

    D.  Plaintiff States a CDAFA Claim……………………………………...……14

    E.  The Rule of Lenity Does not Bar Any of Plaintiff's Claims…………………17

    F.  Plaintiff's UCL Claim is Sufficient…………………………….………17

    G.  To The Extent The Court Finds Her Pleading Insufficient, Plaintiss Should Be Permitted Leave to Amend……………………………………………...…19

PL.'S OPP. TO MOT. TO DISMISS FIRST AM. CMPLT.
CASE NO.: 5:25-CV-03223-SSS-DTB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Google LLC*,
  737 F.Supp.3d 869 (N.D. Cal. 2024) ............................................................ 18, 19

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912 (9th Cir. 2001) .......................................................................... 7

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ........................................................................... 8

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal.App.4th 1544, 62 Cal. Rptr. 3d 177 (2007)...................................... 17

*Bradshaw v. Lowe's Co.*,
  No. 25cv0742 DMS (MMP), 2025 U.S. Dist. LEXIS 223830
  (S.D. Cal. Nov. 12, 2025)................................................................................ 14

*Branca v. Ocwen Loan Servicing, LLC*,
  No. CV 13-7502 BRO (Ex), 2013 U.S. Dist. LEXIS 201815
  (C.D. Cal. Dec. 27, 2013)................................................................................ 17

*Brooks v. Thomson Reuters Corp.*,
  No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093
  (N.D. Cal. Aug. 16, 2021)............................................................................... 4, 6

*Brown v. Google LLC*,
  685 F.Supp.3d 909 (N.D .Cal. 2023) .............................................................. 11

*Calhoun v. Google LLC*,
  526 F.Supp.3d 605 (N.D. Cal. 2021) .............................................................. 19

*Calhoun v. Google, LLC*,
  113 F.4th 1141 (9th Cir. 2024) ....................................................................... 8

*Campbell v. Facebook Inc.*,
  77 F.Supp.3d 836 (N.D. Cal. 2014) ................................................................ 12

*Carpenter v. U.S.*,
  138 S. Ct. 2206 (2018) .................................................................................... 5

*Cody v. Ring LLC*,
718 F.Supp.3d 993 (N.D. Cal. 2024) .............................................................. 8

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ...................................................................................... 13

*D'Angelo v. Penny Opco, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054
(S.D. Cal. Oct. 24, 2023)............................................................................... 12

*Deivaprakash v. Condé Nast Digit.*,
798 F.Supp.3d 1100 (N.D. Cal. 2025) ..................................................... 14, 17

*Doe v. Call-On Doc, Inc.*,
No. 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269
(S.D. Cal. June 13, 2025) .............................................................................. 12

*Doe v. Google LLC*,
741 F.Supp.3d 828 (N.D. Cal. 2024) .............................................................. 4

*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 U.S. Dist. LEXIS 226041 (W.D. Wash. Dec. 19, 2023) ... 19

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ................................................................................... 13

*Fregosa v. Mashable, Inc.*,
No. 25-cv-01094-CRB, 2025 U.S. Dist. LEXIS 200770
(N.D. Cal. Oct. 9, 2025) ........................................................................... 13, 14

*Fregosa v. Mashable, Inc.*,
No. 25-cv-01094-CRB, 2026 U.S. Dist. LEXIS 13274 (N.D. Cal. Jan. 23, 2026) ..... 14

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)..... 13

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F.Supp.3d 1011 (C.D. Cal. 2015) ............................................................. 7

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. Jul. 27, 2023) .............................................. 15

//

//

iii

*Hayden v. Retail Equation, Inc.*,
   No. SA CV 20-01203-DOC-DFM, 2022 U.S. Dist. LEXIS 119792
   (C.D. Cal. May 4, 2022) .................................................................................. 10

*Hernandez v. Hillsides, Inc.*,
   47 Cal.4th 272 (2009) ...................................................................................... 5, 9

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal.4th 1 (1994) ............................................................................................. 10

*Hubbard v. Google LLC*,
   No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 117876, 2024 WL 3302066
   (N.D. Cal. July 1, 2024) .................................................................................... 6

*In re Facebook, Inc. Internet Tracking Litig.*
   956 F.3d 589 (9th Cir. 2020) ...................................................................... 1, 5, 9

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
   613 F.Supp.3d 1284 (S.D. Cal. 2020) .............................................................. 19

*Ji v. Naver Corp.*,
   No. 21-cv-05143-HSG, 2023 U.S. Dist. LEXIS 178311 (N.D. Cal. Oct. 3, 2023)..... 19

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F.Supp.3d 928 (N.D. Cal. 2023) .................................................... 2, 5, 7, 10

*Kellman v. Spokeo, Inc.*,
   599 F.Supp.3d 877 (N.D. Cal. 2022) ................................................................ 4

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) ....................................................................................... 18

*Lau v. Gen. Digit. Inc.*,
   No. 22-cv-08981-JST, 2023 U.S. Dist. LEXIS 236720 (N.D. Cal. Sep. 13, 2023) ...... 9

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .......................................................................... 20

*Maraldo v. Life Ins. Co. of the Sw.*,
   No. 11-CV-4972-YGR, 2012 U.S. Dist. LEXIS 45572 (N.D. Cal. Mar. 30, 2012)...... 7

*Matera v. Google Inc.*,
   No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 107918
   (N.D. Cal. Aug. 12, 2016) ................................................................................. 13

iv

*McCoy v. Alphabet, Inc.*,
  No. 20-cv-05427-SVK, 2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021) ........ 8

*Mendoza v. Trans Valley Transp.*,
  75 Cal.App.5th 748 (2022).................................................................................... 8

*Meta Healthcare Pixel Litig.*,
  713 F.Supp.3d 650 (N.D. Cal. 2024) ................................................................... 15

*Meta Pixel Tax Filing Cases*,
  724 F.Supp.3d 987 (N.D. Cal. 2024) ............................................................. 18, 19

*Mirmalek v. L.A. Times Communs. LLC*,
  No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378
  (N.D. Cal. Dec. 12, 2024) ............................................................................... 4, 14

*Moody v. C2 Educational Systems Inc.*,
  742 F.Supp.3d 1072 (C.D. Cal. 2024) ................................................................. 14

*NovelPoster v. Javitch Canfield Grp.*,
  140 F.Supp.3d 938 (N.D. Cal. 2014) ................................................................... 12

*Nowak v. XAPO, Inc.*, No. 5:20-cv-03643-BLF,
  2020 U.S. Dist. LEXIS 219575, at *13 (N.D. Cal. Nov. 20, 2020) .......................... 15

*Opperman v. Path, Inc.*,
  87 F.Supp.3d 1018 (N.D. Cal. 2014) ................................................................... 10

*People v. Superior Ct. of Riverside Cnty.*,
  81 Cal.App.5th 851 (2022).................................................................................. 17

*Prang v. Los Angeles County Assessment Appeals Board*,
  15 Cal.5th 1152 (2024) ...................................................................................... 13

*R.C. v. Walgreen Co.*,
  733 F.Supp.3d 876 (C.D. Cal. 2024) ................................................................... 11

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F.Supp.3d 1075 (N.D. Cal. 2025) ..........................................................*Passim*

*Riley v. California*,
  573 U.S. 373 (2014).............................................................................................. 5

*Rowe v. Educ. Credit Mgmt. Corp.*,
  559 F.3d 1028 (9th Cir. 2009)................................................................................ 3

v

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010).................................................................................. 17

*Scarlett v. Future US, LLC*,
  2025 Cal. Super. LEXIS 56166 (Super. Ct. San Francisco Cnty. Sept. 5, 2025)........ 14

*Selby v. Sovrn Holdings, Inc.*,
  No. 25-cv-03139-RFL, 2025 U.S. Dist. LEXIS 205538
  (N.D. Cal. Oct. 17, 2025) ................................................................................ 2, 6, 11, 14

*Shah v. Fandom, Inc.*,
  754 F.Supp.3d 924 (N.D. Cal. 2024) .................................................................. 13, 17

*Smith v. LoanMe, Inc.*,
  11 Cal.5th 183 (2021) ............................................................................................. 13

*Smith v. Rack Room Shoes, Inc.*,
  No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025) .... 16

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)..................................................................................... 18

*St. Aubin v. Carbon Health Techs., Inc.*,
  No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ...... 10

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)..................................................................................... 4

*State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.*,
  90 Cal.App.5th 1119 (2023) ..................................................................................... 16

*Torres v. Prudential Fin., Inc.*,
  No. 22-cv-07465 (CRB), 2025 WL 1135088, 2025 U.S. Dist. LEXIS 73736 (N.D.
  Cal. Apr. 17, 2025).................................................................................................. 12

*Toy v. Life Line Screening of Am. Ltd.*,
  No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) .... 18

*Turner v. Porsche Cars N. Am.*, Inc.,
  No. CV 23-06465-MWF (MRWx), 2023 U.S. Dist. LEXIS 225946 (C.D. Cal. Dec.
  19, 2023)................................................................................................................. 18

*U.S Dep't of Just. v. Reps. Comm. For Freedom of Press*,
  489 U.S. 749 (1989).................................................................................................. 6

vi

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011)...................................................................................20

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016)................................................................................19

*User Profile Litig.*,
    402 F.Supp.3d 767 (N.D. Cal. 2019) .......................................................................9

*Valenzuela v. Nationwide Mut. Ins. Co.*,
    686 F.Supp.3d 969 (C.D. Cal. 2023) ......................................................................12

*Yockey v. Salesforce, Inc.*,
    688 F.Supp.3d 962 (N.D. Cal. 2023) .......................................................................8

*Yoon v. Lululemon,*
    *U.S.*, 549 F.Supp.3d 1073 (C.D. Cal. 2021) ...........................................................8

*Zarif v. Hwareh.com, Inc.*,
    789 F.Supp.3d 880 (S.D. Cal. 2025)......................................................................15

*Zhizhi Xu v. Reuters News & Media, Inc.*,
    2025 Cal. Super. LEXIS 76169 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) ..... 14, 17


**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................17

Cal. Civ. Code § 1798.175.........................................................................................4

Cal. Pen. Code § 638.50....................................................................................... 12, 13

Cal. Penal Code § 502(a) ..........................................................................................15

Cal. Penal Code §§ 631(a) ........................................................................................13

§ 502(c)(1)...............................................................................................................15


**Rules**

Fed. R. Evid. 201(b)...................................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This case involves egregious privacy violations perpetuated on an enormous scale across the internet by Defendant, TripleLift, Inc. ("TripleLift" or "Defendant"), a data broker.  Plaintiff's First Amended Complaint (the "FAC")[1] alleges that TripleLift operates an infrastructure that secretly collects massive amounts of personal information on millions of internet users, across various digital environments, including websites, mobile apps, and streaming platforms, and uses that data for commercial gain within the real-time bidding ("RTB") ecosystem, a clandestine network of digital advertisers and clients.  Defendant profits from the taken user data, compiling the information into detailed profiles on consumers and their online behavior, which TripleLift then sells within the RTB system to others at lightning speed without notice or consent by the people from whom the data was gathered.  The result is surveillance of nearly every aspect of consumer's lives and a loss of control of their sensitive information.

TripleLift's motion to dismiss (ECF No. 20-1) ("Motion" or "Mot.") ignores the allegations of the FAC and the well-developed jurisprudence within this Circuit recognizing that the surreptitious aggregation and commercialization of personal information is a serious invasion of privacy.  Plaintiff's allegations mirror those that the Ninth Circuit and courts within it, including this District, find sufficient to state privacy claims against data collectors who, like TripleLift, conduct widespread surveillance, profiling and data selling.  *See, e.g., In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 601 (9th Cir. 2020); *Lewis v. Magnite, Inc.*, No.

---

[1] Plaintiff originally filed this matter in state court and then amended her complaint to correct an error in the naming of the defendant prior to TripleLift's removal of this matter to this Court.  Plaintiff has not previously made any substantive amendments to her original pleading.  Citations to "¶ __" or "¶¶ __" are references to the FAC unless otherwise noted, and abbreviations in the FAC are adopted here unless otherwise noted.

1

2:25-cv-03448-MWC-SSCx, 2025 LX 509487 (C.D. Cal. Dec. 4, 2025); *Krzyzek v. Openx Techs., Inc.*, No. 25-cv-05588-SI, 2026 LX 42961 (N.D. Cal. Jan. 27, 2026); *Selby v. Sovrn Holdings, Inc.,* No. 25-cv-03139-RFL, 2025 U.S. Dist. LEXIS 205538 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 929 (N.D. Cal. 2023).  This Court should not reach a different result.

## II.    FACTUAL BACKGROUND

The FAC sets forth the detailed background concerning TripleLift's data surveillance enterprise.  To summarize, TripleLift is a technology firm and registered data broker that operates in the world of "programmatic advertising," an automated process of buying and selling ad space online.  ¶ 10.  As a registered data broker, TripleLift traffics in secretly-acquired consumer data which it then uses to help its clients sell ads on their websites through nearly instantaneous, clandestine auctions.  *Id*.  TripleLift promises website publishers that they will "get the most competitive price" for their "inventory."  *Id*.  That "inventory" involves information taken from website users without their knowledge or consent.

TripleLift tracks consumer activities on scores of websites through two mechanisms: (1) collecting website user data and disseminating it to bidders in RTB auctions; and (2) deploying tags, pixels, and persistent cookies through its advertising platform, which serve as the foundation for tracking, profiling, and user identification across sites and over time.  ¶ 11; ¶¶ 13-16 (describing RTB ecosystem); ¶¶ 17-29 (describing tags, pixels and persistent cookies and cross platform data collection).  Both mechanisms enable TripleLift to gather sensitive personal information and create detailed profiles for internet users across multiple unrelated websites and across devices through TripleLift's cross-device targeting technology.  ¶ 12. TripleLift aggregates user data from multiple sources, including browsing behavior, device-level data, and third-party partners, and uses that data to support audience targeting, identity matching, and behavioral advertising services.

2

TripleLift's surveillance infrastructure facilitates the commodification of highly sensitive personal information in the RTB system.  Bidders can recognize a user through a synced identifier during an auction, can instantly access the user's stored profile and bid strategically based on that user's browsing history, interests, and past website interactions. ¶¶ 23-24.

TripleLift packages ad slots and associated user data and broadcasts them to a wide array of actors in RTB auctions through "bid requests" sent to potential buyers (or Demand-Side Platforms ("DSP's")).  ¶¶ 15-16.  In doing so, TripleLift is not a passive conduit: TripleLift controls the structure of these bid requests to include information on the people profiled without their knowledge or consent, such as the user's IP address, device information, geolocation, browsing context, and available identifiers.  The DSPs use this information to calculate whether and how much to bid in the auction.  Importantly, each DSP receives this data regardless of whether they bid or win, transforming the RTB system into a massive data collection network. *Id.*

Additionally, TripleLift's tracking mechanisms—bidder tags, tracking pixels and RTB endpoints—intercept the contents of user's communications with websites, revealing what they searched for and webpages they viewed and involve private and sensitive information.  ¶ 29.  The sheer volume and extent of data collected by TripleLift is staggering. The company boasts that it works "with 99% of the top publishers globally, offering billions of impressions across trusted content."  ¶ 28.  And its trackers have been found in 1,539 of the 10,000 sites with the highest traffic worldwide. *Id.*

## III.    ARGUMENT

The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009).  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to

3

dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**A.      Plaintiff Adequately Alleges Her Privacy Claims (Invasion of Privacy and Intrusion Upon Seclusion)**

Given the overlap in the constitutional and common law privacy claims, courts consider them together and ask whether (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.  *Doe v. Google LLC*, 741 F.Supp.3d 828, 844 (N.D. Cal. 2024).  Plaintiff meets her pleading burden as to each.

**1.      The CCPA Does Not Foreclose Plaintiff's Privacy Claims**

TripleLift's unsupported assertion that the CCPA somehow immunizes it is refuted by the statute's language and the rulings of numerous courts.  The CCPA unambiguously states that it was "intended to further the constitutional right of privacy and to supplement existing laws relating to consumers' personal information," and that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control."  Cal. Civ. Code § 1798.175.  TripleLift fails to cite a single case supporting its quasi-preemption defense, which every court to have addressed it has *rejected* as meritless.  *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093, at *18 (N.D. Cal. Aug. 16, 2021) (rejecting defendants' argument that its conduct was "expressly permitted by" the CCPA); *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *15 (N.D. Cal. Dec. 12, 2024) (rejecting argument that CCPA controls because application of stricter privacy laws would "'supplant. . . the detailed notice and 'opt out' framework of the CCPA'"); *Kellman v. Spokeo, Inc.,* 599 F.Supp.3d 877, 897 (N.D. Cal. 2022) (rejecting argument that CCPA contained an "expressed exemption" for its conduct).

**2.      Plaintiff Alleges a Reasonable Expectation of Privacy**

In making its unsupported arguments regarding California's regulatory framework, TripleLift ignores Ninth Circuit authority establishing that the aggregation of large quantities of data can constitute a privacy violation where a defendant gains

"unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d at 601-02 (quoting *Hernandez v. Hillsides, Inc.,* 47 Cal.4th 272, 286 (2009)). "The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself. Rather, we must examine whether the data itself is sensitive and whether the manner it was collected" violates social norms. *Id*. at 603.

*Facebook Tracking* controls here. There, the plaintiffs alleged that Facebook obtained "an enormous amount of individualized data" by collecting URLs of third-party websites that could potentially "divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform" without consent. *Id*. at 603, 605. Because Facebook garnered "a comprehensive browsing history of an individual," the court held that Facebook allegedly compiled "highly personalized profiles from sensitive browsing histories and habits," in which plaintiffs had reasonable expectation of privacy. *Id*. at 603, 604 n.7 (*citing Carpenter v. U.S.*, 138 S. Ct. 2206, 2217 (2018); *Riley v. California*, 573 U.S. 373, 397-99 (2014)). The Ninth Circuit emphasized that under controlling precedent, "individuals have a reasonable expectation of privacy in collections of information" and that "individuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent." *Id*. at 604 n.7.

District courts consistently apply *Facebook Tracking* and find reasonable expectations of privacy in aggregated data. In *Katz-Lacabe v. Oracle*, the court confronted allegations that data broker Oracle invaded the plaintiffs' privacy through its data marketplace. In rejecting the same argument TripleLift makes here, that plaintiffs had no expectation of privacy in their internet activity, the court stated: "Plaintiffs' strongest argument lies in its allegation that Oracle's accumulation of a vast repository of personal data'—from compiling Plaintiffs' browsing activity, online communications, and offline activity—is what contravenes the reasonable expectation of privacy." *Katz-Lacabe*, 668 F.Supp.3d at 942.

*Selby* and *Riganian* are also instructive. Like here, both cases involved a third party "engage[d] in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity—including highly sensitive browsing activity—tied to their email address and other personal identifiers." *Selby*, 2025 U.S. Dist. LEXIS 205538, at *8 (cleaned up). Both courts held such conduct constitutes "a 'highly offensive' privacy intrusion" that suffices for "the tort of intrusion upon seclusion." *Id.*; *Riganian*, 791 F.Supp.3d at 1088 ("[T]he Court cannot at this stage conclude as a matter of law that the alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge is not highly offensive.").

Similarly, in *Brooks v. Thomson Reuters Corp.*, involving a data broker, the court held that "compiling bits of Plaintiffs' personal information scattered throughout the internet (and allegedly in non-public sources) into a dossier is a significant invasion of privacy," noting "[t]he Supreme Court has held that compiling disparate pieces of information about a person into a single dossier, even if the individual pieces of information are publicly available, constitutes a significant invasion of privacy." *Brooks,* 2021 U.S. Dist. LEXIS 154093, at *28 (*citing U.S Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989)).

This is precisely what Plaintiff alleges here—that TripleLift unlawfully tracks, collects, and deanonymizes Plaintiffs' web browsing activity and identification such that Defendant is able to create comprehensive user profiles by matching individuals' identities with the collected data across websites and devices.[2]

---

[2] This case is not remotely like TripleLift's authority, *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 117876, 2024 WL 3302066 (N.D. Cal. July 1, 2024), Mot. at 15, which involved collection by the website operator rather than a third party. 2024 U.S. Dist. LEXIS 117876, at *7 (plaintiffs accessed YouTube, and "Google operates YouTube" and "collects" "information about YouTube's users").

6

PL.'S OPP. TO MOT. TO DISMISS FIRST AM. CMPLT.
CASE NO.: 5:25-CV-03223-SSS-DTB

### 3.   TripleLift Has Not Met Its Burden to Show Plaintiff Consented and Its Request for Judicial Notice Should be Denied

TripleLift unconvincingly cites its own Data Protection Terms and the privacy policies of third parties to rebut Plaintiff's allegations, Mot at 15-17, but any arguments regarding such disclosures are not proper subjects of judicial notice. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("extraneous evidence should not be considered in ruling on a motion to dismiss"). Judicial notice is only proper if an adjudicative fact "is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Maraldo v. Life Ins. Co. of the Sw.*, No. 11-CV-4972-YGR, 2012 U.S. Dist. LEXIS 45572, at *17 (N.D. Cal. Mar. 30, 2012) ("The Ninth Circuit has indicated that judicial notice should only be taken sparingly, with caution, and after demonstration of a 'high degree of indisputability.'"). And perhaps most importantly, to the extent an adjudicative fact may be judicially noticed, it cannot be offered for the truth of the matter asserted. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1029-30 (C.D. Cal. 2015). The FAC did not reference, include or mention TripleLift's Data Protection Terms or any privacy policy on a website Plaintiff visited. The Court should thus reject Defendant's RJN as to these extrinsic documents, and especially since they are offered for their truth on issues that are disputed.

Plaintiff specifically disputes the applicability of TripleLift's Data Protection Terms since Plaintiff is not in privity with TripleLift and did not knowingly interact with it. *Katz-Lacabe*, 668 F.Supp.3d 928. The FAC pleads that "users are never presented with TripleLift's privacy policy, never agree to TripleLift's data collection, and have no opportunity to opt out before their data is transmitted to TripleLift's servers." ¶ 30. With respect to any purported disclosures on the websites Plaintiff visited, the FAC pleads that "[t]he data collection begins immediately when a webpage loads, before users can review any privacy policies or make choices about tracking." ¶ 31.

7

Contrary to TripleLift's flawed assertion, the mere existence of website privacy policies is not a sufficient showing of consent since TripleLift has not shown any unambiguous manifestation of assent. *Yoon v. Lululemon U.S.*, 549 F.Supp.3d 1073, 1077 (C.D. Cal. 2021) (no consent where "Lululemon did not ask Yoon to agree to the Privacy Policy"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022) ("Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the user what action would constitute assent"); *Mendoza v. Trans Valley Transp.*, 75 Cal.App.5th 748, 786 (2022) ("Merely agreeing ... to 'read, observe and abide by' the contents of the Handbook ... does not constitute a contract"). Nor has any court ever held that "merely having a privacy policy online is sufficient to show consent under CIPA." *See Cody v. Ring LLC*, 718 F.Supp.3d 993, 1000 (N.D. Cal. 2024).

Even if Plaintiff was on notice of and assented to the prevention.com and weather.com policies, that does not mean that the policies adequately disclosed Defendant's conduct such that TripleLift would be entitled to dismissal of the FAC. Consent is an affirmative defense which Defendant has the burden to prove and here, as the Ninth Circuit makes clear, "[w]hether a 'reasonable' person … consented to a particular data collection practice … must take into account the level of sophistication attributable to the general public." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). With this standard in mind, the generic portions of the privacy policies Defendant cites state that data *may* be shared with vendors or "[f]or advertising and marketing." Mot. at 15. None of that comes remotely close to disclosing TripleLift's sophisticated "aggregation, synthesis, and sale of comprehensive online and offline data of individuals." *Riganian*, 791 F.Supp.3d at 1088; *Yockey v. Salesforce, Inc.*, 688 F.Supp.3d 962, 977 (N.D. Cal. 2023) ("Regardless of whether the hyperlink to the privacy policy appeared … the policy's language does not encompass the conduct at issue."); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 U.S. Dist. LEXIS 24180, at *18 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not

8

prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims.").

Plaintiff disputes whether a reasonable person would understand what any of the website statements mean and whether they ever fully disclose the extent of the data collection involved. Indeed, prevention.com and weather.com are likely not even aware of the scores of other websites on which Defendant's trackers are operative, and could not adequately apprise someone of the extent to which they would be tracked in the indefinite future by unknown parties.

Finally, even if Plaintiff consented to Defendant's conduct on the two exemplar websites (she did not), that does not mean she was not tracked without consent on other websites, prior to or after visiting prevention.com or weather.com, in connection with TripleLift's efforts to compile a dossier on Plaintiff. Thus, Plaintiff would still have a claim against Defendant and she should be permitted to conduct discovery.

### 4. TripleLift's Conduct Is Highly Offensive

"Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook Tracking*, 956 F.3d at 606 (*quoting Hernandez*, 47 Cal. 4th at 287). "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id*.

As a threshold matter, the Ninth Circuit instructs, and courts repeatedly recognize, that the question of offensiveness is one for the jury, not the Court. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Lau v. Gen. Digit. Inc.*, No. 22-cv-08981-JST, 2023 U.S. Dist. LEXIS 236720, at *16 (N.D. Cal. Sep. 13, 2023) (*quoting In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767,

9

797 (N.D. Cal. 2019)).  "Only if the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests' can the 'question of [a serious or highly offensive] invasion [] be adjudicated as a matter of law." *St. Aubin v. Carbon Health Techs., Inc.,* No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *35 (N.D. Cal. Oct. 1, 2024) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 40 (1994).  Moreover, where, as here, defendants claim their data gathering practices are "'routine' commercial behavior" (Mot. At 16), dismissal is "particularly inappropriate. . . [because] Defendants are the only party privy to the true extent of the intrusion on Plaintiffs' privacy." *Hayden v. Retail Equation, Inc.*, No. SA CV 20-01203-DOC-DFM, 2022 U.S. Dist. LEXIS 119792, at *25 (C.D. Cal. May 4, 2022); *Opperman v. Path, Inc*., 87 F.Supp.3d 1018, 1061 (N.D. Cal. 2014) (rejecting "routine commercial behavior" defense).

To the extent the Court engages in a threshold analysis of offensiveness, the weight of authorities cited herein and extensive factual allegations in the FAC demonstrate TripleLift's conduct involving the surreptitious collection of data into an extensive digital profile on unsuspecting users, is highly offensive and egregious.  As in *Katz-Lacabe*, such allegations "go well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements."  668 F.Supp.3d at 942.

**B.      Plaintiff States a CIPA Wiretapping Claim Under Section 631**

**1.      Plaintiff Alleges TripleLift's Willful Actions**

The FAC is replete with allegations establishing the willfulness of TripleLift's conduct and no further detail is required at the pleadings stage.  As set forth above, TripleLift's self-serving reliance on its own policy purportedly requiring its customers to "comply with all Data Protection Laws," Mot. at 18, is irrelevant and not properly considered on a motion to dismiss.  And again, Plaintiff's claim is against TripleLift, not TripleLift's customers.  Plaintiff is not in privity with TripleLift and has no relationship with TripleLift.  Any requirement arguably imposed by TripleLift on its customers, who are not parties in this case, and whether those customers complied or

10

sought to comply with TripleLift's requirements have no bearing on the issues here since TripleLift is independently liable for its own CIPA violations.

### 2. Plaintiff Alleges that TripleLift "Acquired the Contents" of Her Communications

The FAC details how TripleLift intercepted the contents of Plaintiff's and Class Members' communications, sufficiently stating a CIPA claim. "Content is defined to 'include[] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown v. Google LLC*, 685 F.Supp.3d 909, 935 (N.D .Cal. 2023). This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA").

Here, Plaintiff alleges that, at least on some websites, Defendant collects the specific web pages they visit and read, which disclose personal interests, queries, and habits. ¶ 29 (referring to health.com). The FAC also alleges that TripleLift's tracking technologies collect browsing and behavioral information across websites and that through syncing, users are de-anonymized. *See* ¶¶ ¶¶ 23-24. Plaintiff thus plausibly alleges that Defendant intercepted the "contents" of users' communications. *Selby*, 2025 U.S. Dist. LEXIS 205538, at *9 (finding "contents" intercepted where "Plaintiffs have alleged that, among other things, [defendant] collects 'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed").

### 3. Plaintiff's Communications Were Intercepted While in Transit

Contrary to TripleLift's contentions, Plaintiff alleges that the tracking technologies *do* intercept communications contemporaneously while they are in transit since the trackers cause users' browsers to simultaneously transmit the contents of their communications to TripleLift's servers. ¶ 51. Courts routinely find that online trackers

11

like those at issue here intercept communications in transit. *See, e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F.Supp.3d 969, 978 (C.D. Cal. 2023); *Doe v. Call-On Doc, Inc.,* No. 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269, at *34-35 (S.D. Cal. June 13, 2025) (finding interceptions occurred in transit where plaintiff alleged that Google Analytics' tracking code and TikTok Pixel sent simultaneous transmissions of her information and intercepted plaintiff's information in real time).

TripleLift's authorities do not otherwise weigh against contemporaneous interception. Plaintiff's allegations do not concern emails, as *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938 (N.D. Cal. 2014) did; the burdens of summary judgment at issue in *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) are irrelevant here.

Regardless, on a motion to dismiss, a plaintiff is not required to allege how and when their communications are captured, and "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny Opco, LLC,* No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *20 (S.D. Cal. Oct. 24, 2023)*; see also*, *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 841 (N.D. Cal. 2014) ("While Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not during transmission, that issue [] would be better addressed as part of a motion for summary judgment with a more developed factual record.").

### C.     Plaintiff Adequately States a CIPA Pen Register Claim

CIPA defines "pen register" and "trap and trace" devices as devices or processes that "dialing, routing, addressing, or signaling information" relating to "a wire *or electronic communication*, but not the contents of a communication." Cal. Pen. Code § 638.50 (emphasis added). TripleLift erroneously argues CIPA does not apply to tracking activities on the internet but the statute expressly extends protection to internet

12

communications through ***both*** "wire" and "electronic communications." As such, "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024); *Prang v. Los Angeles County Assessment Appeals Board*, 15 Cal.5th 1152, 1180 (2024) ("Where statutory text is unambiguous and provides a clear answer, courts need go no further."). Here,"[t]he statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here." *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 U.S. Dist. LEXIS 200770, at *26 (N.D. Cal. Oct. 9, 2025); *Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 933 (N.D. Cal. 2024) ("The pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies.").

Indeed, "[i]f the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *30 (N.D. Cal. July 14, 2025) (citing Cal. Penal Code §§ 631(a) (clause one), 632.7). And, Defendant's recitation of legislative history is wrong. "In enacting the Invasion of Privacy Act, the Legislature declared in broad terms its intent to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 199 (2021) (cleaned up). "In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 107918, at *1 (N.D. Cal. Aug. 12, 2016) (*quoting Flanagan v. Flanagan*, 27 Cal.4th 766, 775 (2002) (cleaned up).

Federal courts within the Ninth Circuit have ***unanimously*** rejected challenges to analogous pen register claims. *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2026 U.S. Dist. LEXIS 13274, at *4 (N.D. Cal. Jan. 23, 2026) ("<u>every</u> federal court to tackle the CIPA applicability question has rejected [defendant]'s position") (emphasis in original); *see also*, *Riganian*, 791 F.Supp.3d at 1093-94; *Deivaprakash v. Condé Nast Digit.*, 798 F.Supp.3d 1100, 1108 (N.D. Cal. 2025); *Selby*, 2025 U.S. Dist. LEXIS 205538, at *10-11.

Against these authorities, Defendant regurgitates arguments that have been conclusively rejected. *Fregosa*, 2025 U.S. Dist. LEXIS 200770, at *6 ("Several judges in this district, including Judges Lin, Orrick, Pitts, Ryu, Tigar, and [Breyer], have held that such allegations suffice at the pleading stage."); *Bradshaw v. Lowe's Co.*, No. 25cv0742 DMS (MMP), 2025 U.S. Dist. LEXIS 223830, at *18 (S.D. Cal. Nov. 12, 2025) ("[T]he case law is not in Defendants' favor. Indeed, it uniformly supports the opposite outcome."); *Moody v. C2 Educational Systems Inc.*, 742 F.Supp.3d 1072, 1076 (C.D. Cal. 2024) (rejecting argument that a pen register must be telephone); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (same); *Selby*, 2025 U.S. Dist. LEXIS 205538, at *9 (same). A number of state court decisions are in accord. *See, e.g., Zhizhi Xu v. Reuters News & Media, Inc.*, 2025 Cal. Super. LEXIS 76169, at *10 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025); *Scarlett v. Future US, LLC*, 2025 Cal. Super. LEXIS 56166, *10 (Super. Ct. San Francisco Cnty. Sept. 5, 2025).

### D.    Plaintiff States a CDAFA Claim

TripleLift makes four cursory, unsupported arguments regarding the CDAFA in support of its Motion, none of which should be sustained. First, TripleLift calls CDAFA an "anti-hacking statute" and urges dismissal because "this is not a 'hacking' case." Mot. at 25. Not so. The California Legislature enacted CDAFA with the intent to "expand the degree of protection afforded to individuals […] from […] unauthorized access to […] computer data and computer systems, and declared that "protection of the integrity of all types and forms of […] computers, computer systems, and computer data

14

is vital to the protection of the privacy of individuals." Cal. Penal Code § 502(a) (emphasis added). Moreover, TripleLift ignores Plaintiff's allegations that its installation of trackers on their computers was unauthorized and without consent. *See, e.g.* ¶¶ 12, 30-32, 39. And again, as argued above, TripleLift's repeated reliance on extrinsic and irrelevant documents to create factual disputes is inappropriate on the instant motion.

Consistent with Plaintiff's allegations of "no permission," which this Court must take as true, courts routinely find that unauthorized installation of tracking technologies give rise to CDAFA claims. *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1035, 1047-49 (S.D. Cal. Jul. 27, 2023) (sustaining CDAFA claim where the defendant embedded its tracking code into third-party apps, which secretly collected app users' data, finding that such tracking was done "without permission"); *Meta Healthcare Pixel Litig.*, 713 F.Supp.3d 650, 656 (N.D. Cal. 2024) (sustaining CDAFA claim when defendant surreptitiously placed a cookie on the plaintiffs' computers, which caused the computers to redirect the plaintiffs' data to the defendant).

Second, CDAFA only requires allegations of knowing access of computer data— not knowledge or intent to violate the statute, as TripleLift asserts. *See, e.g.*, Penal Code § 502(c)(1). In arguing otherwise, TripleLift ignores Plaintiff's allegations that it knowingly and intentionally installed the trackers on their computers for its own financial gain. This is nothing like *Nowak v. XAPO, Inc.*, No. 5:20-cv-03643-BLF, 2020 U.S. Dist. LEXIS 219575, at *13 (N.D. Cal. Nov. 20, 2020), Mot. at 26, where the plaintiff failed to allege that the defendant was even involved in the hacking, directly or indirectly and notably, the plaintiff was also given leave to amend to cure this deficiency. TripleLift's implication that Plaintiff must plead knowledge of illegality is unsupported by any statutory language or caselaw and rejected under similar statutes. *See Zarif v. Hwareh.com, Inc.*, 789 F.Supp.3d 880, 894 (S.D. Cal. 2025) (rejecting argument that conduct was not intentional under federal wiretapping statute because the defendant "'had no reason to know' that using "'a widely deployed website software for

15

ad optimization could violate wiretapping and hacking statutes," and finding that plaintiff had adequately alleged that defendant "acted deliberately when it deployed tracking software that intercepted her communications").

Third, Plaintiff adequately alleges compensatory damages, including by explaining how TripleLift "was unjustly enriched and profited from the data taken" by using Plaintiff's and Class Members' personally identifying information obtained in violation of CDAFA to maximize advertising revenue, which damages courts have repeatedly upheld. ¶ 68. As the court in *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 149750, at *8 (N.D. Cal. Aug. 4, 2025) explained with respect to online trackers, "Plaintiffs have a 'stake in the profits garnered' unjustly from their data [… that] 'exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.'" (finding unjust profit from the use of the plaintiffs' private personal information constitutes "damage or loss" within the meaning of CDAFA).

Lastly, because Plaintiff's CDAFA claims arise from TripleLift's unauthorized tracking, **not from fraud**, a heightened pleading standard for fraud is inapplicable. Even if it were, as summarized above, Plaintiff's detailed factual allegations are more than sufficient to "identif[y] the particular alleged wrongs" and provide "sufficient notice of the conduct at issue." *State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.*, 90 Cal.App.5th 1119, 1138 (2023). For example, Plaintiff describes TripleLift's tracking mechanisms, the installation of cookies on users' computers, the creation of digital profiles and the ability to identify users through syncing. With respect to Plaintiff specifically, she alleges that she used two websites on which **TripleLift does not dispute the trackers were installed**. Plaintiff alleges that she "used the search bar [on prevention.com] to search for information regarding her personal health and read articles on the website" and that her "personal information, including her IP address, device information, browsing activity, and persistent user identifier, was intercepted and collected by TripleLift." ¶ 36. Such allegations are routinely upheld in pen register and

16

other pixel tracking cases.

###### E. The Rule of Lenity Does not Bar Any of Plaintiff's Claims

Courts have recognized that "[t]he Court's task is to interpret the law as the Legislature wrote it" and "the pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies." *Shah,* 754 F.Supp.3d at 932-33. TripleLift's rule of lenity argument fails because the rule applies "only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." *People v. Superior Ct. of Riverside Cnty.*, 81 Cal.App.5th 851, 886 (2022). There is no such egregious ambiguity here as courts have found in rejecting the same rule of lenity argument in similar cases against data collectors. *Deivaprakash*, 798 F.Supp.3d at 1108; *Riganian*, 791 F.Supp.3d at 1094; *Zhizhi Xu*, 2025 Cal. Super. LEXIS 76169, at *12-13.

###### F. Plaintiff's UCL Claim is Sufficient

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "A business act or practice may violate the UCL if it is either unlawful, unfair, or fraudulent. Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (citations and quotation marks omitted).

To state a claim under the "unlawful" prong, Plaintiff must establish a violation of another law. *Branca v. Ocwen Loan Servicing, LLC*, No. CV 13-7502 BRO (Ex), 2013 U.S. Dist. LEXIS 201815, at *42 (C.D. Cal. Dec. 27, 2013) (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554, 62 Cal. Rptr. 3d 177 (2007) ("[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.")). Here, because Plaintiff has adequately pled violations of CIPA, invasion of privacy, breach of confidence, and negligence/negligence *per se*, Plaintiff states a claim under the UCL. *Branca*, 2013 U.S. Dist. LEXIS 201815, at *42.

17

Plaintiff has separately stated a claim under the "unfair" prong of the UCL. *See, e.g., Toy v. Life Line Screening of Am. Ltd.,* No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872, at \*7 (N.D. Cal. Mar. 19, 2024) ("As for the unfair prong, [plaintiff] alleges that [defendant]'s intentional use of hidden and undisclosed tracking pixels offended public policy (including the federal and state privacy statutes and state consumer protection statutes, such as CIPA) and constitute immoral unethical, oppressive, and unscrupulous activities that caused substantial injury. The complaint plausibly alleges violations of the unlawful and unfair prongs of the UCL") (internal record citations and quotations omitted).

As to injury, there are "innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322–23 (2011). For example, UCL standing can be based on: (1) invasion of privacy; (2) being deprived of the benefit of the bargain; and (3) loss of payment for data taken. *Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1023–25 (N.D. Cal. 2024).[3]

**First**, Plaintiff's allegations of invasion of privacy give rise to actionable injury. *See Meta Pixel Tax Filing Cases*, 724 F.Supp.3d at 1024 ("[p]rivacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL"); *A.B. v. Google LLC*, 737 F.Supp.3d 869, 881 (N.D. Cal. 2024) (same). **Second**, by alleging that Plaintiff and Class Members would not have

---

[3] TripleLift's argument that "UCL claims cannot proceed when a plaintiff has an adequate remedy at law," Mot. at 29, is flat wrong. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020) was a case *exclusively* for equitable restitution and not money damages. And in *Turner v. Porsche Cars N. Am.*, Inc., No. CV 23-06465-MWF (MRWx), 2023 U.S. Dist. LEXIS 225946, at \*18 (C.D. Cal. Dec. 19, 2023), the plaintiff sought equitable relief under the CLRA and the court required "at the very least… a simple allegation that legal remedies are inadequate in order to state a claim." Plaintiff was thereafter given leave to amend to address this pleading issue. In any event, Plaintiff's UCL claims here are sufficiently plead and should proceed.

18

used the had known Defendant was disclosing their personally identifying information to third parties, Plaintiff alleges benefit of the bargain damages, which Defendant does not address.  ¶ 89; *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F.Supp.3d 1284, 1301 (S.D. Cal. 2020) ("benefit of the bargain damages represent economic injury for the purposes of the UCL" (collecting cases); *Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2023 U.S. Dist. LEXIS 178311, at *29-30 (N.D. Cal. Oct. 3, 2023) (UCL standing existed where plaintiffs alleged "collection and use of [] data deprived [plaintiffs] of the benefit of their bargain").)  **Third**, Plaintiff alleges that Defendant harmed her and Class Members by taking their property (¶ 89 (alleging lost money or property, including access to their private and personal data)) and describe the financial value in their information to TripleLift's business.  While there is some split in authority (*see A.B. v. Google LLC*, 737 F.Supp.3d at 881 (N.D. Cal. 2024) (describing the split and citing cases), Plaintiff submits that the better reasoned cases find that harms establish standing. *See, e.g.*, *Calhoun v. Google LLC* 526 F.Supp.3d 605, 636 (N.D. Cal. 2021) ("plaintiffs who suffer[] a loss of their personal information suffer[] economic injury and have [UCL] standing"); *Meta Pixel Tax Filing Cases*, 724 F.Supp.3d at 1023–25 (N.D. Cal. 2024) (UCL standing from "diminished value" and being deprived of the "right to exclude" others from one's taken data); *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 U.S. Dist. LEXIS 226041, at *30 (W.D. Wash. Dec. 19, 2023) (recognizing diminution of value of personal information as harm under UCL).

## G.    To The Extent The Court Finds Her Pleading Insufficient, Plaintiff Should Be Permitted Leave To Amend

TripleLift's Motion should be denied for the reasons stated herein.  Should the Court grant the Motion, however, Plaintiff respectfully requests leave to amend.  The Ninth Circuit has consistently granted plaintiffs leave to amend regardless of multiple previously amended pleadings.  *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend even though the

19

plaintiff had previously amended his pleading three times). Furthermore, the Ninth Circuit emphasizes that "[u]nder futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts").

In this case, the Court has not yet ruled on the merits of Plaintiff's allegations and it is far from certain that Plaintiff's claim is futile. As noted herein, numerous courts have sustained claims similar to those here. However, if the Court deems any of the claims inadequately pleaded, Plaintiff requests leave to amend.

Respectfully submitted,

Dated: February 27, 2026

**MILLER SHAH LLP**

By: */s/ James C. Shah*
James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Kyle Shamberg (*pro hac vice*)
**CARROLL SHAMBERG, LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
Telephone: (872) 215-6205

20

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Counsel for Plaintiff and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL L.R. 5-4.3.4(a)(2)

The filer attests that the signatory listed above, on whose behalf the filing is submitted, is a registered CM/ECF filer and concurs in the filing's content and has authorized the filing.

Dated: February 27, 2026          */s/ Kolin C. Tang*
                                   Kolin C. Tang

21

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,531 words, which complies with the word limit of L.R. 11-6.1.


Dated:  February 27, 2026                      /s/ *Kolin C. Tang*
                                               Kolin C. Tang

22