Nicola C. Menaldo (*pro hac vice*)
NMenaldo@perkinscoie.com
Anna Mouw Thompson (*pro hac vice*)
AnnaThompson@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone:  206.359.8000
Facsimile:    206.359.9000

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone:  310.788.9900
Facsimile:    310.788.3399

Attorneys for Defendant Triple Lift, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON MANIER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRIPLE LIFT, INC.,<br><br>Defendant. | Case No. 5:25-cv-03223-SSS-DTB<br><br>**TRIPLE LIFT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: April 3, 2026<br>Time: 2:00 p.m.<br>Courtroom 2<br><br>Judge: Hon. Sunshine S. Sykes |

## I.    INTRODUCTION

Plaintiff's opposition confirms that none of the CAC's claims against TripleLift are viable. That result is unsurprising because California's Legislature and voters have already made clear that the online data collection practices Plaintiff challenges are not a privacy violation, but a legitimate, regulated part of the online economy. Plaintiff lacks a reasonable expectation of privacy, identifies no highly offensive conduct, and has not alleged sufficient facts to plead her CIPA, CDAFA, or UCL claims. TripleLift asks the Court to dismiss the CAC in full.

## II.    ARGUMENT

**A.    Plaintiff has not stated a privacy claim (counts four & six).**

*No Reasonable Expectation of Privacy*. Plaintiff concedes that the CCPA regulates online data collection and that TripleLift has complied with its detailed regulatory regime. *See* Mot. 14. She likewise concedes that sources of positive law governing the right to privacy, like the CCPA, inform the reasonable expectation of privacy analysis. *Id*. Yet she does not explain how she could have reasonably expected that her data would *not* be collected for targeted advertising consistent with CCPA regulations on that very topic. *See* Mot. 14. Nor could she. Expecting TripleLift *not* to engage in the very same behavior regulated by the CCPA is unreasonable as a matter of law, justifying dismissal of Plaintiff's privacy claims.

Plaintiff mischaracterizes TripleLift's argument as one of "quasi-preemption," Opp'n 4, and cites a string of inapposite cases that neither involve privacy claims nor consider TripleLift's *actual* argument regarding the CCPA's effect on reasonable privacy expectations. *See Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (rejecting argument that CCPA preempts CIPA); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 897 (N.D. Cal. 2022) (rejecting argument that CCPA immunized behavior from UCL liability); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *6 (N.D. Cal. Aug. 16, 2021) (similar). Plaintiff also briefly invokes Cal. Civ. Code § 1798.175,

but fails to identify any "law relating to consumers' personal information" that conflicts with specific "provisions of [the CCPA]." *Id.* Accordingly, this citation, too, is utterly irrelevant.

Plaintiff then claims that *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) "controls here." Opp'n 5. Not so. That case predates the CCPA, and the defendant allegedly collected data in violation of its own promises, which it then combined with real names and biographical details. 956 F.3d at 601–04. TripleLift has not made any misrepresentations, nor is it alleged to have collected real names. Plaintiff's reliance on *Katz-Lacabe v. Oracle America Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023), and *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025), is similarly misplaced because those cases also involved privacy policy misrepresentations absent here. Next, *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025), involved "highly sensitive browsing activity . . . tied to [the plaintiff's] email address and other personal identifiers," *id.* at *3. But Plaintiff does not plausibly allege that TripleLift collected sensitive data. Mot. 16. *Brooks* is even further afield—the defendant allegedly collected and sold arrest records, utility records, and "even records indicating whether a person has had an abortion." 2021 WL 3621837, at *1. Nothing of the sort is alleged here: Plaintiff alleges that TripleLift collected only the same sort of information collected ubiquitously online in the context of real-time bidding and website analytics technologies.

When, as here, aggravating factors like those above are absent, courts recognize data collection as a legitimate business activity that does not give rise to invasion of privacy claims. Mot. 14–15 (collecting cases). Indeed, Plaintiff offers no response to the broader point that cross-contextual behavioral advertising has been ubiquitous across the internet for over a decade, diminishing her reasonable expectation of privacy with respect to the types of online data that such advertising involves. Mot. 14–15 (collecting cases); *see Ardente, Inc. v. Shanley*, 2010 WL

546485, at *6 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").

Plaintiff's response to the website privacy policies attached to TripleLift's Motion is also baseless. Plaintiff begins by misrepresenting TripleLift's *notice* argument as a *consent* argument. Opp'n 7.[1] But TripleLift never endeavored to establish consent, because notice alone renders Plaintiff's claimed expectation unreasonable. Mot. 14–15 (collecting cases). Next, Plaintiff claims that the Court cannot take judicial notice of the privacy policies in question. Opp'n 7. That is wrong: "as a general matter, websites and their contents may be proper subjects for judicial notice provided that the party submits a copy of the relevant webpage to the court" (as TripleLift did here) because whether the website was in the public realm is not subject to reasonable dispute. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1053 (N.D. Cal. 2025) (citation modified); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 189–90 (N.D. Cal. 2019); *see also* RJN 1–3 (collecting cases). TripleLift is not asking the Court to assess "the truth of the matter asserted," Opp'n 7, but rather to take notice that statements existed online disclosing use of tracking technologies for advertising on every webpage Plaintiff visited. Mot. 15.

*No Highly Offensive Conduct.* Plaintiff does not dispute that the "highly offensive" inquiry turns on prevailing social norms, and statutes like the CCPA are the clearest expression of those norms. Mot. 17. Nor does she dispute that the CCPA permits the data collection practices alleged or that it grants notice and opt-*out* rights instead of proscribing the conduct. These concessions are fatal: conduct cannot be legislatively sanctioned yet highly offensive at the same time.

Plaintiff tries to sidestep this result by arguing that the "highly offensive" question cannot be resolved at the pleadings stage. Caselaw refutes that position:

---

[1] Plaintiff asserts that the "data collection begins immediately when a webpage loads[.]" Opp'n 7. But even assuming that's true, it makes no difference because she does not allege that the website homepages are at all sensitive.

TRIPLELIFT'S REPLY IN SUPPORT OF MOT. TO DISMISS | CASE NO. 5:25-CV-03223-SSS-DTB

courts routinely grant motions to dismiss on this issue where, as here, the alleged conduct is neither egregious nor outside the bounds of accepted commercial practice. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021) (collecting cases); *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025).

### B. Plaintiff has not stated a CIPA wiretapping claim (count one).

*Willfulness*. Judicially noticeable policies establish that TripleLift requires its customers to comply with applicable laws and that the websites Plaintiff visited disclosed TripleLift's data collection. *See supra* at 3. Those policies preclude a finding of "intentional" interception. Plaintiff's contention that the CAC is "replete" with allegations of willfulness (without citation) does not begin to address TripleLift's argument. *See* Mot. 15–16. And her assertion that the disclosures should be disregarded because she lacks "privity with TripleLift" only underscores TripleLift's point: TripleLift has no direct relationship with Plaintiff, so it requires its customers to make disclosures and adhere to contractual obligations—precisely as in *Briskin v. Shopify Inc.*, 2026 WL 161441, at *6 (N.D. Cal. Jan. 21, 2026), which dismissed CIPA claims for lack of intent on materially indistinguishable facts. Plaintiff does not address *Briskin* at all.

*Contents*. Plaintiff maintains that TripleLift obtained the contents of her communications by collecting "the specific web pages [she] visit[ed] and read," some of which "disclose personal interests, queries, and habits." Opp'n 11. That is wrong. The Ninth Circuit has squarely held that "webpage address[es]" are not "contents." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). And it has likewise held that the ability to draw interest-related inferences from a webpage does not transform URLs into content. *Id.* at 1101. Plaintiff's vague gesture at "queries," Opp'n 11, cannot save her claims. While the *Zynga* court left open the possibility that, in some circumstances, URLs revealing a person's search terms

could reveal the contents of a person's communications, it by no means suggested that a *bare allegation* of search term interception could withstand a motion to dismiss. 750 F.3d at 1107. Plaintiff's concession that the CAC does not allege any specific search terms or explain how they might reveal her thoughts and ideas is thus fatal. *See Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) (dismissing for lack of detail on search terms).

*In Transit.* CIPA's in-transit requirement erects an intentionally high bar, requiring not only interception but also an attempt to "read or understand" the contents of a communication while in transit. Mot. 20 (collecting cases). In claiming that she cleared that bar, Plaintiff points to her assertion that TripleLift "causes [users'] browsers to simultaneously transmit the contents of those communications to TripleLift's servers . . . in real-time." CAC ¶ 51. But repeating buzzwords like "simultaneously" and "real-time" is not enough absent supporting facts—as recognized in the cases cited by both parties. *See, e.g.*, Mot. 21; *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (cited at Opp'n 12 and finding allegations sufficient where the plaintiff "did not simply recite that there was real time interception, she added detail on how it occurs . . . and pointed to statements from [the defendant] regarding '[r]eal-time insights'"). Nor can Plaintiff point to anything in the CAC that establishes the second half of the "in transit" inquiry—whether TripleLift "attempt[ed] to read, or to learn the contents of" Plaintiff's communications during the short in-transit window. Cal. Penal Code § 631(a). That omission, too, is fatal.

**C. Plaintiff has not stated a CIPA Section 638.51 claim (count two).**

Plaintiff has no compelling answer to TripleLift's straightforward textual argument: that the pen register statute's repeated reference to "telephone line[s]" shows it was intended to apply to telephone technologies and other person-to-person communications akin to telephone calls—not website trackers. Mot. 23–24.

Plaintiff's lone response is to seize on the term "electronic communications"

to argue that the statute "expressly extends" to online technologies. Opp'n 12–13. But by the time the Legislature enacted California's pen register statute, most people had already traded their wire-based landline telephone services for more modern "electronic" equivalents—for example, cellular networks and VoIP services like FaceTime and WhatsApp. The phrase "electronic communications" thus does nothing to undermine the clear textual focus on telephones and person-to-person communications.

Outside that response, Plaintiff simply ignores TripleLift's arguments. Mot. 21–25. She makes no attempt to reconcile her theory with Section 638.52, which requires courts to include "the telephone line to which the pen register or trap and trace device is to be attached" in an order. She never addresses the common understanding of a pen register at the time of enactment—a device used by law enforcement to determine what telephone numbers were being dialed by criminal suspects (Mot. 21–22). Plaintiff doesn't discuss or cite any case law addressing the pen register provision's legislative history, including the 2015 legislative debate that highlighted its narrow law enforcement purposes. *Id.* She offers no rebuttal to TripleLift's point that her interpretation would render California's comprehensive privacy statutes—which specifically regulate the collection of data including IP addresses and cookies—nullities. Mot. 23. And she ignores that her theory would outlaw much of the internet *because* consent is only a defense as to a narrow class of "provider[s] of electronic or wire communication service[.]" Cal. Penal Code § 638.51(b). Finally, she ignores that data revealing the *origin* of communications as opposed to their destination cannot be the basis for a pen register claim. Mot. 25 n.2.

Plaintiff claims that federal courts "unanimously" reject challenges to pen register claims.[2] Opp'n 14. That's untrue. Several federal courts dismissed such

---

[2] While this Court has permitted a pen register claim to proceed beyond the pleading stage, the defendant did not raise, so the Court had no occasion to assess, many of the arguments TripleLift advances here—including TripleLift's textual

claims after finding that the harms alleged did not even give rise to a cognizable Article III injury. *See* Dkt. 20-10 at 62–63. And unlike the reasoned decisions issued by state courts (Mot. 21)—the courts that actually receive and decide requests for pen register orders—Plaintiff's cases (Opp'n 14) largely ignore the statute's focus on telephones, and the untenable implications of Plaintiff's theory (Mot. 24).

TripleLift respectfully asks this Court to engage with the statutory text and legislative history that other courts have overlooked and dismiss Plaintiff's pen register claim, or alternatively, defer decision until the California Court of Appeal weighs in. *See* Mot. 28 n.3.

### D. Plaintiff has not stated a CDAFA claim (count three).

Plaintiff's CDAFA claim fails on four independent grounds: (1) failure to plead TripleLift's knowledge; (2) lack of allegations that TripleLift acted "without permission"; (3) failure to comply with Rule 9(b); and (4) lack of statutory standing. Nothing in Plaintiff's opposition rescues that claim.

As to lack of knowledge, Plaintiff has no response to *Tsering* and *Briskin*—CDAFA cases on all fours with this one (Mot. 26)—and instead relies on "caselaw . . . under similar statutes" to argue that "CDAFA only requires allegations of knowing access to computer data." Opp'n 15. But *CDAFA* caselaw is clear: "[t]he statutory requirement that an individual act 'knowingly' imports . . . an awareness of the facts which bring the proscribed act within the terms of the statute"—i.e., that the challenged access was "without permission." *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (citation modified). When, as here, a defendant's policies impose disclosure requirements on its customers, the

---

analysis centering around the statute's repeated references to "telephones," the fact that Plaintiff's reading would nullify the CCPA and Delete Act, or the fact that the "consent" exception is of limited applicability. *See Doe v. Talkiatry Mgmt. Servs., LLC*, 2026 WL 206483, at *4 (C.D. Cal. Jan. 22, 2026); *Doe v. Talkiatry Mgmt. Servs., LLC*, 2025 WL 3190813, at *7 (C.D. Cal. Oct. 1, 2025); *supra* at 5–6.

defendant cannot *know* that any access was "without permission." *Briskin*, 2026 WL 161441, at *6. Plaintiff's only response—that the Court cannot take judicial notice of TripleLift's policies—is a nonstarter. *Supra* at 3.

On "without permission," Plaintiff cites just two cases finding that tracking technologies sometimes can underpin CDAFA claims. But she has no response to the line of authority interpreting "without permission" consistent with CDAFA's anti-hacking purpose such that it "require[s] the defendant to act in a manner that overcomes technical or code-based barriers." *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *14 (C.D. Cal. Dec. 12, 2025) (citation modified) (collecting cases). There is no circumvention of such barriers here.

As to her Rule 9(b) pleading deficiency, Plaintiff says her claims "arise from . . . unauthorized tracking, not from fraud," Opp'n 16, but that assertion is inconsistent with her allegations, which include that TripleLift acted in "secret[]" and within a "clandestine network" "for commercial gain," Opp'n 1. Courts apply Rule 9(b) to CDAFA claims under analogous circumstances. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019). Even if Rule 8 applied here, Plaintiff does not allege sufficient facts: the CAC simply regurgitates the statutory language. CAC ¶¶ 63–69.

Finally, on statutory standing—which requires a showing of "damage or loss"—Plaintiff has abandoned three of the CAC's four theories. *See* CAC ¶ 68. The only theory she endeavors to defend is that TripleLift was "unjustly enriched and profited" from her data. Opp'n 16. But it is well-established that "the profit [a] [d]efendant ma[kes] as a result of disclosing Plaintiffs' data is [not] sufficient to demonstrate a loss" under CDAFA. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). The lone case Plaintiff cites for the contrary position, *Smith v. Rack Room Shoes*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025), is an outlier. And its rationale does not withstand scrutiny, because the court's holding was based on *In re Facebook*, which addressed "unjust profits" under Article III

standing, 956 F.3d at 600, not CDAFA's more exacting "damage or loss" requirement. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 n.5 (N.D. Cal. 2023) (distinguishing Article III standing from CDAFA's requirement).

### E. The rule of lenity applies.

Plaintiff does not dispute that the rule of lenity applies to criminal statutes like CIPA and CDAFA, but she insists that CIPA and CDAFA are not ambiguous enough to trigger the rule here. Opp'n 17. Plaintiff is wrong. "CIPA is a total mess," and courts have struggled to "apply CIPA's already-obtuse language to new technologies." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025). "[I]t's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute," because "[c]ourts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability." *Id.* The California Court of Appeal has deemed it necessary to weigh in on CIPA's pen register provision, and the splits of authority on many elements of Plaintiff's CIPA and CDAFA claims prove the grievous ambiguity here. Mot. 17–27; *supra* at 4–8.

Faced with such pervasive uncertainty, courts should "resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe*, 806 F. Supp. 3d at 1112; *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1204–05 (Mass. 2024); *Gray v. Twitter Inc.*, 2021 WL 11086642, at *8 (W.D. Wash. Mar. 17, 2021). TripleLift respectfully asks the Court to do the same here, including with respect to terms like "willfully," "in transit," "pen register," and "without permission." Mot. 27.

### F. Plaintiff has not stated a UCL claim (count five).

Plaintiff has not been deprived of money or property, as required to show UCL standing. She claims that her alleged privacy injury gives her UCL standing because TripleLift took "her . . . property," Opp'n 19, but "the weight of the authority in the district and the state, however, point in the opposite direction: that the mere misappropriation of personal information does not establish compensable

damages." *Katz-Lacabe*, 668 F. Supp. 3d at 943 (citation modified) (dismissing UCL claim). That is especially so when, as here, there are no allegations that Plaintiff ever attempted to monetize her data. *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 976 (C.D. Cal. 2023). While Plaintiff gestures vaguely at a "benefit of the bargain" theory, she concedes that she has no relationship with TripleLift— much less one that could give rise to a "bargain" as in her cited cases involving contracting parties. Opp'n 19.

Plaintiff's UCL claim also fails under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Plaintiff does not allege "specific facts" explaining why legal remedies are inadequate as required to pursue equitable remedies. *See Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021). Plaintiff seems to respond that she is *not* seeking an equitable remedy, because she is seeking "money damages." Opp'n 18 n.3. But the UCL only authorizes equitable remedies. *See Nacarino*, 2021 WL 3487117, at *12. If Plaintiff is seeking legal remedies under the UCL, that is an independent ground for dismissal.

On the merits, Plaintiff concedes that her UCL "unlawful" claims rise and fall with her derivative claims, which all fail for the reasons discussed *supra*. And she offers no response to TripleLift's argument that the "unfair" claim "cannot survive if the claim[] under the ['unlawful'] prong[] of the UCL do[es] not survive" given that it rests on the same conduct. *Starstone Specialty Ins. Co. v. Avenior Senior Living, LLC*, 2025 WL 3248686, at *10 (C.D. Cal. Oct. 24, 2025). Accordingly, Plaintiff's "unfair" claims also fall with her derivative claims.

### III.    CONCLUSION

The CAC should be dismissed.

Dated: March 20, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*
    Nicola C. Menaldo (*pro hac vice*)
    NMenaldo@perkinscoie.com
    Anna Mouw Thompson (*pro hac vice*)
    AnnaThompson@perkinscoie.com
    PERKINS COIE LLP
    1301 Second Avenue, Suite 4200
    Seattle, Washington 98101-3804
    Telephone: 206.359.8000
    Facsimile: 206.359.9000

    Alisha C. Burgin, Bar No. 286269
    ABurgin@perkinscoie.com
    PERKINS COIE LLP
    1888 Century Park East, Suite 1700
    Los Angeles, California 90067-1721
    Telephone: 310.788.9900
    Facsimile: 310.788.3399

    Colin Lubelczyk (*pro hac vice*)
    clubelczyk@perkinscoie.com
    PERKINS COIE LLP
    1120 NW Couch Street 10th Floor
    Portland, Oregon 97209-4128
    Telephone: 503.727.2162
    Facsimile: 503.727.2222

Attorneys for Defendant Triple Lift, Inc.

11

TRIPLELIFT'S REPLY IN SUPPORT OF MOT. TO DISMISS | CASE NO. 5:25-cv-03223-SSS-DTB

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Triple Lift, Inc., certifies that this brief contains 3,340 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 20, 2026                    **PERKINS COIE LLP**


                                         By: */s/ Nicola C. Menaldo*
                                              Nicola C. Menaldo (*pro hac vice*)

                                         Attorneys for Defendant Triple Lift, Inc.