UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-03223-SSS-DTBx | Date | April 15, 2026 |
|---|---|---|---|
| Title | *Sharon Manier et al. v. Triple Lift Inc et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S REQUEST FOR JUDICIAL NOTICE [DKT NO. 20]

Before the Court is Defendant Triple Lift Inc.'s Motion to Dismiss. [Dkt. No. 20]. The Motion is fully briefed and ripe for review. [Dkt. No. 20-1, "Motion"; Dkt. No. 25, Opposition or "Opp."; Dkt. No. 26, "Reply"]. Defendant has also submitted a Request for Judicial Notice in connection with the Motion. [Dkt. No. 20-12, "Request for Judicial Notice" or "Request"].

Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion, and **GRANTS IN PART and DENIES IN PART** Defendant's Request for Judicial Notice.

## I.     BACKGROUND

Defendant Triple Lift Inc. is a data broker and advertising technology company that helps publishers sell digital advertisement space through cross-contextual behavioral advertising.  [Dkt. No 1-1 ¶¶ 2, 10, "First Amended Class Complaint" or "FACC"; Motion at 10].  According to the FACC, Triple Lift "tracks consumers across the internet" through two mechanisms: (1) collecting website users' data and disseminating that data to bidders in "real-time bidding" actions; and (2) deploying tags, pixels, and cookies through its advertising platform.  [FACC ¶ 2].  Individuals, through visiting certain websites, can unknowingly provide information that triggers detection by pixels or trackers.  [*Id.* ¶¶ 13–35; Motion at 11].  Upon detecting information, these pixels or trackers collect the information and then create profiles that serve commercial purposes.  [*Id.*].

This case arises out of Defendant's alleged transmission of Plaintiff's personal information.  This personal information includes "her IP address, device information, browsing activity, and persistent user identifier."  [FACC ¶ 36].  The Court cites the facts as alleged in the FACC.

At some point in time, Plaintiff visited multiple websites that contained Triple Lift's tracking technologies and used search bars to find information and articles pertaining to her personal health.  [FACC ¶ 36]. Plaintiff alleges that Triple Lift identified Plaintiff, created a profile containing her likes and interest, and shared Plaintiff's personal information as part of its bid requests for targeted advertising.  [*Id.* ¶ 37].  Plaintiff states that she neither knew nor had reason to know that an unknown third-party like Triple Lift was collecting and disseminating information about her web activity.  [*Id.* ¶ 39].

Plaintiff filed suit on behalf of herself and similarly situated individuals on October 7, 2025.  On November 25, 2025, Plaintiff filed a First Amended Class Complaint, adding Triple Lift, Inc. as a defendant.  [Dkt. No. 1-1, "First Amended Class Complaint" or "FACC"].  The FACC alleges violations of various California laws, the California Constitution, and common law invasion of privacy claims.  [*See generally id.*].  Defendant filed this Motion on January 30, 2026, seeking to dismiss all claims in the FACC.  [*See* Motion].

Defendant's Motion argues that Plaintiff's claims are not legally viable.  [Motion at 28–29].  Furthermore, Defendant contends the FACC is factually deficient and cannot support its claims.  [*Id.* at 13–27].

For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

## II.   REQUEST FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of nine items: (1) Exhibit 1: a copy of the Privacy Policy applicable to weather.com; (2) Exhibit 2: a copy of the Privacy Notice applicable to prevention.com; (3) Exhibit 3: a copy of the Vendor Privacy Practices and Opt Outs page applicable to weather.com; (4) Exhibit 4: a copy of Triple Lift's Data Protection Terms; and (5) Exhibits 6 through 9: various copies of California state court records.  [*See generally* Request].  Plaintiff opposes the Request.  [Opp. at 15–17].

Federal Rule of Evidence 201 permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Each of the documents and the particular facts for which Defendants seeks judicial notice "can be accurately and readily determined from sources who accuracy cannot be questioned."  *See Gary G., et al. v. Gavin Newsom, et al.,* 2025 WL 1754951, (C.D. Cal. 2025) (holding that court records are subject to judicial notice because their accuracy can be readily determined).

Because Plaintiff objects to these Exhibits 1 through 4 due to Defendant's use of these materials "for their truth on issues that are disputed," the Court **DENIES** the Request for Exhibits 1 through 4.  However, Exhibits 6 through 9 appear to have no objection, and are court documents that are relevant to the issues in this case and meet the requirements of Federal Rule of Evidence 201(b).  Thus, the Court **GRANTS** the Request as to Exhibits 6 through 9.

Accordingly, Defendant's Request for Judicial Notice is **GRANTED IN PART** and **DENIED IN PART**.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).   To survive a Rule 12(b)(6) motion, a plaintiff

must allege sufficient facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In analyzing a motion to dismiss, a court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor.  *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).  A court need not accept, however, "a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  When reviewing a Rule 12(b)(6) motion, a court must consider the complaint in its entirety and any attached documents, documents incorporated by reference, or matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  If a complaint fails to state a plausible claim, a court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if such a request was not made, unless amendment would be futile.  *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

## IV.    DISCUSSION

Defendant raises challenges to each of Plaintiff's causes of action, asserting that Plaintiff fails to state a claim upon which relief can be granted, or that plaintiff fails to properly allege necessary elements.  The Court takes each cause of action in turn.

### A.    Claim 1: CIPA

The California Invasion of Privacy Act ("CIPA") prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner."  Cal. Pen. Code § 631(a).  The analysis for a violation of CIPA is the same as under the Federal Wiretap Act.  *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 858 (C.D. Cal. 2024) (collecting authorities).

Defendant challenges Plaintiff's CIPA claim for failure to allege that Defendant willfully intercepted the "contents" of her communications while they were "in transit".  [Motion at 17–21].  Plaintiff disputes the adequacy of its factual allegations, and suggests "no further details is required at the pleadings stage."  [Opp. at 18].

CIPA liability only extends to willful or intentional conduct.  *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024).  Although Plaintiff

suggests that "the [FACC] is replete with allegations establishing the willfulness of [Defendant's] conduct," Defendant maintains that Plaintiff cannot show willfulness where Triple Lift has policies that preclude a finding of "intentional" interception. [Opp. at 18; *see also* Motion at 17–18; Reply at 5].

According to Defendant, *Briskin v. Shopify* provides persuasive authority against a finding of willfulness. [Motion at 18; Reply at 5]. Plaintiff's Opposition does not engage with this argument. [*See generally* Opp.]. In *Briskin*, the Northern District of California found that a plaintiff did not adequately allege requisite intent for a CIPA violation because the defendant had instituted policies requiring its merchants to obtain the plaintiff's consent for access to information. *Briskin v. Shopify Inc.*, No. 21-CV-06269-PJH, 2026 WL 161441 at *4 (N.D. Cal. Jan. 21, 2026). Here, Defendant analogizes Triple Lift's policies that require its customers (*i.e.*, sites that Plaintiff and putative class members have visited) to comply with data protection laws and ensure privacy disclosures to those described in *Briskin*. [Motion at 17–18]. The Court is persuaded by Defendant's argument. *Briskin* observed that the defendant's "state of mind is the same, regardless of what [other entities the plaintiff interacted with] ultimately do with their privacy policy." *Briskin*, 2026 WL 161441 at *4. Whether or not the websites that Plaintiff in this case obtained her proper consent to collect her data, Defendant's intent would be the same because its internal policies reflect an intent against deliberately collecting data without consent.

At this stage, the Court **GRANTS** Defendant's Motion to Dismiss as to Claim 1. However, the Court provides Plaintiff with **LEAVE TO AMEND** to cure any factual pleading deficiencies associated with the CIPA claim.

### B.    Claim 2: Cal. Penal Code § 638.51

Plaintiff also alleges a violation of California Penal Code § 638.51. [FACC ¶¶ 57–62]. Section 638.51 prohibits the use of pen registers and trap and trace devices, which are "device[s] or process[es]" that record or capture "dialing, routing, addressing, or signaling information" from a "wire or electronic communication," "but not the contents of a communication." Cal. Penal Code §§ 638.50(b)–(c); 638.51. To state a claim under § 638.51, a plaintiff must allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id.* *See also* § 638.51. A "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."

§ 638.50(b). "In determining whether a device is a pen register, courts must look to the *type of information* being collected." *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413 at *2 (Cal. Super. Oct. 2, 2024) (emphasis added). Software that "identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" constitutes a "pen register." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

According to the FACC, Defendant used bidder tags, tracking pixels, and Real-Time Bidding ("RTB") endpoints, each of which constitutes a pen register. [FACC ¶ 60]. In simpler terms, Plaintiff's theory is that Defendant utilized third-party trackers as pen registers under the meaning of § 638.51 because these trackers recorded Plaintiff's IP addressing information, but not necessarily the contents of the communications that she had transmitted from using certain websites. Plaintiff further alleges Defendant did so without authorization of a court order to track Plaintiff's location data and personal information. [*Id.* ¶ 61]. Defendant does not appear to dispute whether there exists a court order authorizing this conduct.

Instead, Defendant argues that § 638.51 generally does not apply to online advertising technologies. [Motion at 21]. In doing so, Defendant observes that the statutory text of § 638.51 "targets telephone technologies," and legislative history confirms that the "bill had two narrow law enforcement purposes" that would not extend to this dispute. [*Id.* at 22].

In response, Plaintiff suggests Defendant's interpretation of CIPA is erroneous; instead, the Opposition asserts that CIPA "expressly extends protection to internet communications through ***both*** 'wire' and 'electronic communications.'" [Opp. at 20–21].

The Court has already rejected arguments like Defendant's. *See Lewis v. Magnite, Inc.*, No. 2:25-CV-03448-MWC-SSCX, 2025 WL 3687546 at *13 (C.D. Cal. Dec. 4, 2025). In *Lewis*, the Court found that collecting and recording the plaintiffs' movements across the internet was conduct that falls under § 638.50(b). *Id.* The conduct alleged in the FACC is essentially identical to the conduct in *Lewis*. Plaintiff alleges that Defendant "record[ed] addressing and signaling information" such as IP addresses to "systematically identify consumers, gather routing information, and correlate this data across multiple websites and devices." [FACC ¶ 60]. Viewing the facts in the light most favorable to Plaintiff, the FACC plausibly alleges a claim under § 638.51.

Accordingly, the Court **DENIES** the Motion as to Claim 2.

### C.    Claim 3: California Penal Code § 502

California's Comprehensive Computer Data Access and Fraud Act ("CDAFA") prohibits one who [knowingly accesses and without permission "alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data"; "takes, copies, or makes use of any data from a computer, computer system, or computer network"; "uses or causes to be used computer services"; "provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section"; "accesses or causes to be accessed any computer, computer system, or computer network"; and "introduces any computer contaminant into any computer, computer system, or computer network."  Cal. Penal Code § 502(c).

Defendant argues that Plaintiff neither plausibly alleges unauthorized access nor sufficiently pleads injury under CDAFA.  [Motion at 25–27].  Defendant also challenges the legal sufficiency of this claim.  [*Id.*].  Plaintiff responds that "CDAFA only requires allegations of knowing access of computer data—not knowledge or intent to violate the statute, as [Defendant] asserts."  [Opp. at 23].

The previous discussion of *Briskin* counsels the same conclusion.  *See supra* at Part III.A.  Even when accepting the facts alleged as true, nothing in the FACC provides support as to whether Defendant possessed the requisite intent to support the CDAFA claim.  Plaintiff provides only conclusory allegations that Defendant "did not have authorization or consent to collect users' IP addresses and other routing information."  [FACC ¶¶ 36, 39, 76].  Such legally conclusory allegations cannot survive a motion to dismiss.  Especially where Defendant argues that its policies required websites to disclose the use of tracking technologies, the FACC does not plausibly support an inference that Defendant knew it collected Plaintiff's data without authorization.

The Court **GRANTS** the Motion as to Claim 3.  Plaintiff is provided **LEAVE TO AMEND** to cure any deficiencies associated with this claim.

///

---

### D.      Claims 4 and 6: Invasion of Privacy

Claim 4 alleges invasion of privacy under the California State Constitution, while Claim 6 alleges the common law claim of intrusion upon seclusion.  The elements of invasion of privacy are: (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) a highly offensive intrusion. *See Hernandez v. Hillsides Inc.*, 47 Cal.4th 272, 287 (2009).  The elements of intrusion upon seclusion are: (1) a defendant "intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) that the intrusion was "highly offensive" to a reasonable person. *Id.* at 286.

Because the two tests are similar, courts often "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 605 (9th Cir. 2020).  The inquiry about the offensiveness of an intrusion involves examining "all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's motives and objectives." *Hernandez*, 47 Cal. 4th at 295.  "The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

Defendant's Motion argues that Plaintiff lacks a reasonable expectation of privacy and does not describe highly offensive conduct.  [Motion at 13–17].  Defendants posit that Plaintiff unreasonably claims surprise over business practices that "California law acknowledges as lawful" and that certain California laws "expressly *permit[]* the tracking and sharing of online activity and creation of profiles" that Plaintiff challenges.  [*Id.* at 15–16].

Plaintiff responds that she did possess a reasonable expectation of privacy because the "data itself is sensitive" and how her data was collected "violates social norms."  [Opp. at 13].  Moreover, Plaintiff argues Defendant's conduct is highly offensive because Defendant's creation of an "extensive digital profile on unsuspecting users" goes beyond routine commercial behavior.  [*Id.* at 18].

### 1.      Reasonable Expectation of Privacy

Courts consider a variety of factors in determining whether a reasonable expectation of privacy exists, including the "customs, practices, and circumstances surrounding a defendant's particular activities." *Facebook*, 956 F.3d at 602.  In *Facebook*, plaintiffs alleged plausibly a reasonable expectation of privacy in their

browsing data where defendant Facebook collected their browsing data even after they logged out of Facebook, because they had "privacy interests" in their browsing histories and other collected data, and because of the "allegedly surreptitious and unseen data collection." *Id.* at 602–03; *see also id.* at 603 ("[B]oth the nature of collection and the sensitivity of the collected information are important.").

Here, the FACC alleges Defendant collected Plaintiff's and putative class members' "IP addresses, location data, device information, and other routing information across multiple unrelated websites" despite having no direct relationship with them. [FACC ¶ 74]. Moreover, Defendant used this information to "build comprehensive profiles of their online activities." [*Id.*]. Accepting these facts as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that a reasonable factfinder could determine that Plaintiff had a reasonable expectation of privacy. The manner of Defendant's data collection and subsequent usage of the data to create profiles even after Plaintiff's visit to certain sites is comparable to the logic in *Facebook*. As such, the Court finds Plaintiff had a reasonable expectation of privacy.

### 2.     Highly Offensive

"Actionable invasions of privacy also must be highly offensive to a reasonable person, and sufficiently serious and unwarranted so as to constitute an 'egregious breach of the social norms." *Facebook*, 956 F.3d at 606 (internal quotations marks and citation omitted). "Determining whether a defendant's actions were highly offensive to a reasonable person requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* (internal quotation marks and citations omitted). "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.* "Whether [ ] conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022).

A reasonable factfinder could determine the alleged unauthorized collection of personally identifiable information and use of that information "create detailed profiles of individuals of individuals through its cookie syncing . . . across multiple unrelated websites" was an unacceptable intrusion in violation of public policy.

[FACC ¶ 95].  Because Defendant's actions may constitute a highly offensive intrusion, the FACC raises a question that cannot be resolved on a motion to dismiss as a matter of law.  *See Facebook*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.")

Defendant's Motion to Dismiss is **DENIED** as to Claims 4 and 6.

### E.        Claim 5: California Business & Professional Code § 17200

California's Unfair Competition Law ("UCL ") prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200. UCL claims may only be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Plaintiff, therefore, must "demonstrate some form of economic injury," such as surrendering more or acquiring less in a transaction, having a present or future property interest diminished, being deprived of money or property, or entering a transaction costing money or property that would otherwise have been unnecessary.  *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011); *see also Vinluan-Jularbal v. Redbubble, Inc.*, 2021 WL 4286539, at *3 (E.D. Cal. Sept. 21, 2021) (plaintiff must "establish a loss of deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury") (quotations and citation omitted).

Defendant argues Plaintiff lacks standing to bring this UCL claim.  [Motion at 28–29].  Plaintiff argues that she has sufficiently alleged an injury based on privacy harms involving personal data, benefit of the bargain damages, and harm in the form of loss of property and financial value of their information provided to Defendant.  [Opp. at 26–27].

The Court first considers Plaintiff's benefit of the bargain argument.  This theory of injury fails because the FACC does not adequately allege that Plaintiff or any putative class members have paid money or property "in exchange for a product or service, and [have] not received what [they] bargained for."  *See Winzig v. Stockpile Investments, Inc.*, 2021 WL 4812956, at *4 (C.D. Cal. July 2, 2021). Plaintiff merely visited a few websites and used the sites' search bar to get information regarding her personal health and to read articles.  [FACC ¶ 36].

A "benefit of the bargain" approach to establishing injury for a UCL claim is based in the California Supreme Court's recognition that a plaintiff may demonstrate economic injury from unfair competition by showing that she

"surrender[ed] in a transaction more, or acquire[d] in a transaction less, than [she] otherwise would have." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). Although Plaintiff alleges that she "would not have used certain websites had they known Defendant was disclosing [] personally identifying and addressing information," there are no factual allegations to suggest that Plaintiff engaged in any transaction with Defendant. Rather, Plaintiff's transactions were with the websites through which she used the search bar. Because Plaintiff appears to maintain the position that she is not in privity with Defendant, this theory of injury is unavailing. [Opp. at 15].

Next, the Court is unpersuaded by Plaintiff's "economic value" and privacy-based harm theory of injury. The Ninth Circuit has articulated that "the 'mere misappropriation of personal information' does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021). Moreover, although Plaintiff observes that her personal data was valuable to Defendant, "[t]hat the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property." *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021). *See also Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1088-89 (N.D. Cal. Sept. 7, 2023). Nothing in the FACC supports an inference that Plaintiff monetized her data nor attributed economic value to it to warrant a UCL violation. *See Griffith v. TikTok, Inc.*, 697 F.Supp.3d 963, 976 (C.D. Cal. 2023).

The Court concludes Plaintiff has not adequately pled an injury to support the UCL claim. Defendant's Motion to Dismiss is **GRANTED** as to Claim 5. Plaintiff is granted **LEAVE TO AMEND**.

## V. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss as follows:

- The Motion to Dismiss is **GRANTED** as to **Claims 1, 3, and 5**. Plaintiff is **GRANTED** leave to amend to cure these deficiencies.

- The Motion to Dismiss is **DENIED** as to **Claims 2, 4, and 6**.

Moreover, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Request for Judicial Notice.

Plaintiffs are **ORDERED** to file an amended complaint by **April 24, 2026,** as to the surviving claims.  Plaintiffs are also **ORDERED** to email a red-lined version of the amended complaint to SSS_chambers@cacd.uscourts.gov on the date it is filed.  If an amended complaint is filed, Defendants must either file a motion to dismiss or responsive pleading within 14 days after being served with the amended complaint.

**IT IS SO ORDERED.**