James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

*Counsel for Plaintiff and the Proposed Class*
*(Additional Counsel on Signature Page)*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHARON MANIER, individually and on behalf of all others similarly situated,<br>*Plaintiff,*<br><br>v.<br><br>TRIPLELIFT INC., a New York corporation.<br>*Defendant.* | Case No.: 5:25-cv-03223-SSS-DTB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TRIPLE LIFT, INC.'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Date: August 7, 2026**<br>**Time: 2:00 p.m.**<br>**Courtroom 2**<br><br>**Hon. Sunshine S. Sykes** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

I. Introduction ..... 1

II. Factual Background ..... 2

III. Argument ..... 4

A. Plaintiff Adequately Alleges That TripleLift Acted With the Requisite Intent ..... 4

1. The Court Declined to Take Judicial Notice of TripleLift's Data Protection Terms ..... 5

2. Plaintiff's Allegations Demonstrate Intentionality ..... 5

B. TripleLift "Acquired the Contents" of Plaintiff's Communications ..... 9

C. Plaintiff's Communications Were Intercepted While in Transit ..... 11

D. Plaintiff States a CDAFA Claim ..... 12

E. The Rule of Lenity Does not Bar Any of Plaintiff's Claims ..... 13

F. To The Extent The Court Finds Her Pleading Insufficient, Plaintiff Should Be Permitted Leave To Amend ..... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adair v. Aylo USA Inc.*,No. 2:25-cv-06351-WLH-KS, 2026 U.S. Dist. LEXIS 111114 (C.D. Cal. May 19, 2026) .......... 11

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) .......... 5

*Briskin v. Shopify Inc.*, No. 21-cv-06269-PJH, 2026 U.S. Dist. LEXIS 11317 (N.D. Cal. Jan. 21, 2026) .......... 6

*Brown v. Google LLC*, 685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 9, 14

*Campbell v. Facebook Inc.*, 77 F.Supp.3d 836 (N.D. Cal. 2014) .......... 11

*D'Angelo v. Penny Opco, LLC*, No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023) .......... 11

*Doe v. Call-On Doc, Inc.*, No. 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269 (S.D. Cal. June 13, 2025) .......... 11

*Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 U.S. Dist. LEXIS 140287 (N.D. Cal. July 22, 2025) .......... 7, 8

*Doe v. Google LLC*, 741 F.Supp.3d 828 (N.D. Cal. 2024) .......... 8

*Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064 (N.D. Cal. 2023) .......... 7, 8

*Garon v. Keleops USA, Inc.*, No. 25-cv-02124-DMR, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025) .......... 14

*Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011 (C.D. Cal. 2015) .......... 5

*Gladstone v. Amazon Web Servs., Inc.*, 739 F.Supp.3d 846 (W.D. Wash. 2024) .......... 7

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. Jul. 27, 2023) .......... 12

*Hassid v. Alex and Ani, LLC*,
816 F.Supp.3d 1196 (C.D. Cal. Jan. 20, 2026) .......... 9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 1

*In re Google Assistant Priv. Litig.*,
457 F.Supp.3d 797 (N.D. Cal. 2020) .......... 4

*In re Meta Pixel Tax Filing Cases*,
724 F.Supp.3d 987 (N.D. Cal. 2024) .......... 7

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) .......... 2, 9

*Krzyzek v. Openx Techs., Inc.*,
817 F.Supp.3d 857 (N.D. Cal. 2026) .......... 2, 9

*L.B. v. LinkedIn Corp.*, No. 5:24-cv-06832-EJD,
2025 U.S. Dist. LEXIS 193980 (N.D. Cal. Sep. 30, 2025) .......... 7, 8

*Lewis v. Magnite, Inc.*, No. 2:25-cv-03448-MWC-SSCx,
2025 LEXIS 509487 (C.D. Cal. Dec. 4, 2025) .......... 1

*Lopez v. Apple, Inc.*,
519 F.Supp.3d 672 (N.D. Cal. 2021) .......... 4

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 14

*Maraldo v. Life Ins. Co. of the Sw.*, No. 11-CV-4972-YGR,
2012 U.S. Dist. LEXIS 45572 (N.D. Cal. Mar. 30, 2012) .......... 5

*Meta Healthcare Pixel Litig.*,
713 F.Supp.3d 650 (N.D. Cal. 2024) .......... 12

*People v. Avery*,
27 Cal. 4th 49, 115 Cal. Rptr. 2d 403, 38 P.3d 1 (2002) .......... 13

*People v. Nuckles*,
56 Cal. 4th 601, 155 Cal. Rptr. 3d 374, 298 P.3d 867 (2013) .......... 13

*People v. Superior Ct. of Riverside Cnty.*,
81 Cal. App. 5th 851 (2022) .......... 14

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) .......... 9

*Riganian v. LiveRamp Holdings, Inc.*,
791 F.Supp.3d 1075 (N.D. Cal. 2025) .......... 2, 14

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) .......... 4

*Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL,
2025 U.S. Dist. LEXIS 205538 (N.D. Cal. Oct. 17, 2025) .......... 2, 10

*Semien v. Pubmatic Inc.*, No. 25-cv-03164-SI,
2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026) .......... 9

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183, 276 Cal. Rptr. 3d 746, 483 P.3d 869 (2021) .......... 13

*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL,
2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025) .......... 13

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 4

*State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.*,
90 Cal.App.5th 1119 (2023) .......... 12

*Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL,
2026 U.S. Dist. LEXIS 5762 (N.D. Cal. Jan. 12, 2026) .......... 8

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .......... 14

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......... 14

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. 2023) .......... 11

<u>Rules</u>

Fed. R. Civ. P. 8(a)(2) .......... 10

Fed. R. Evid. 201(b) .......... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case involves egregious privacy violations perpetuated on an enormous scale across the internet by Defendant, TripleLift, Inc. ("TripleLift" or "Defendant"), a data broker. Plaintiff's Second Amended Complaint (the "SAC")[1] alleges that TripleLift operates an infrastructure that secretly collects massive amounts of personal information on millions of internet users, across various digital environments, including websites, mobile apps, and streaming platforms, and uses that data for commercial gain within the real-time bidding ("RTB") ecosystem, a clandestine network of digital advertisers and clients. Defendant profits from the taken user data, compiling the information into detailed profiles on consumers and their online behavior, which TripleLift then sells within the RTB system to others at lightning speed without notice or consent by the people from whom the data was gathered. The result is surveillance of nearly every aspect of consumer's lives and a loss of control of their sensitive information.

TripleLift's motion to dismiss (ECF No. 32-1) ("Motion" or "Mot.") ignores the allegations of the SAC and the well-developed jurisprudence within this Circuit recognizing that the surreptitious aggregation and commercialization of personal information is a serious invasion of privacy. Plaintiff's allegations mirror those that the Ninth Circuit and courts within it, including this District, find sufficient to state privacy claims against data collectors who, like TripleLift, conduct widespread surveillance, profiling and data selling. *See, e.g., In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 601 (9th Cir. 2020); *Lewis v. Magnite, Inc.*, No.

---

[1] Plaintiff originally filed this matter in state court and then amended her complaint to correct an error in the naming of the defendant prior to TripleLift's removal of this matter to this Court, then again in response to the Court's order on TripleLift's motion to dismiss the First Amended Complaint. Citations to "¶ __" or "¶¶ __" are references to the SAC unless otherwise noted, and abbreviations in the SAC are adopted here unless otherwise noted.

2:25-cv-03448-MWC-SSCx, 2025 LEXIS 509487 (C.D. Cal. Dec. 4, 2025); *Krzyzek v. Openx Techs., Inc.*, 817 F.Supp.3d 857 (N.D. Cal. 2026); *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 U.S. Dist. LEXIS 205538 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 941-45 (N.D. Cal. 2023).

The SAC also adequately alleges that TripleLift acted with the requisite intent to plead a violation of CIPA and the CDAFA. Its Motion should be denied.

## II. FACTUAL BACKGROUND

The SAC sets forth the detailed background concerning TripleLift's data surveillance enterprise. To summarize, TripleLift is a technology firm and registered data broker that operates in the world of "programmatic advertising," an automated process of buying and selling ad space online. ¶ 10. As a registered data broker, TripleLift traffics in secretly-acquired consumer data which it then uses to help its clients sell ads on their websites through nearly instantaneous, clandestine auctions. *Id*. TripleLift promises website publishers that they will "get the most competitive price" for their "inventory." *Id*. That "inventory" involves information taken from website users without their knowledge or consent.

TripleLift tracks consumer activities on scores of websites through two mechanisms: (1) collecting website user data and disseminating it to bidders in RTB auctions; and (2) deploying tags, pixels, and persistent cookies through its advertising platform, which serve as the foundation for tracking, profiling, and user identification across sites and over time. ¶ 11; ¶¶ 13-16 (describing RTB ecosystem); ¶¶ 17-29 (describing tags, pixels and persistent cookies and cross platform data collection). Both mechanisms enable TripleLift to gather sensitive personal information and create detailed profiles for internet users across multiple unrelated websites and across devices through TripleLift's cross-device targeting technology. ¶ 12. TripleLift aggregates user data from multiple sources, including browsing behavior, device-level data, and third-party partners, and uses that data to support audience targeting, identity matching, and

behavioral advertising services.

TripleLift's surveillance infrastructure facilitates the commodification of highly sensitive personal information in the RTB system. Bidders can recognize a user through a synced identifier during an auction, can instantly access the user's stored profile and bid strategically based on that user's browsing history, interests, and past website interactions. ¶¶ 23-24.

TripleLift packages ad slots and associated user data and broadcasts them to a wide array of actors in RTB auctions through "bid requests" sent to potential buyers (or Demand-Side Platforms ("DSP's")). ¶¶ 15-16. In doing so, TripleLift is not a passive conduit: TripleLift controls the structure of these bid requests to include information on the people profiled without their knowledge or consent, such as the user's IP address, device information, geolocation, browsing context, and available identifiers. The DSPs use this information to calculate whether and how much to bid in the auction. Importantly, each DSP receives this data regardless of whether they bid or win, transforming the RTB system into a massive data collection network. *Id.*

Additionally, TripleLift's tracking mechanisms—bidder tags, tracking pixels and RTB endpoints—intercept the contents of user's communications with websites, revealing what they searched for and webpages they viewed and involve private and sensitive information. ¶ 29. The sheer volume and extent of data collected by TripleLift is staggering. The company boasts that it works "with 99% of the top publishers globally, offering billions of impressions across trusted content." ¶ 28. And its trackers have been found in 1,539 of the 10,000 sites with the highest traffic worldwide. *Id.*

TripleLift knew its tracking technologies were deployed on websites where users access highly sensitive personal information, including health and wellness websites such as Health.com and Prevention.com, but did not implement any meaningful technical measures to exclude such websites, suppress transmission from sensitive pages, or prevent interception of sensitive communications on those sites. ¶ 41. This interception of the user's IP address, URLs, referrers, device information, browsing

data, and other personal information occurs before the user has any opportunity to review a privacy policy, provide consent, or take any action to control the collection of their data. ¶ 37.

## III. ARGUMENT

The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### A. Plaintiff Adequately Alleges That TripleLift Acted With the Requisite Intent

In its MTD Order, the Court concluded that Plaintiff failed to allege TripleLift intended to collect her data without authorization because "its internal policies reflect an intent against deliberately collecting data without consent" and dismissed Plaintiff's CIPA and CDAFA claims on that basis, *id.* at 5, 7. In doing so, the Court relied on the contents of TripleLift's Data Protection Terms, of which the Court had denied its request to take judicial notice. *See id.* at 3. Accordingly, those terms were not, and are not, properly before the Court, and cannot form the basis for the Court's conclusion that TripleLift's conduct was not intentional.

Even if they were, however, at the pleading stage "interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.'" *Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 684 (N.D. Cal. 2021) (quoting *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 815 (N.D. Cal. 2020)). Particularly in light of Plaintiff's amended allegations regarding the design and function of TripleLift's surveillance technology, and the centrality of this data collection to TripleLift's entire business model, Plaintiff has alleged the necessary intent to state a claim under CIPA and the CDAFA.

### 1. The Court Declined to Take Judicial Notice of TripleLift's Data Protection Terms

The Court denied TripleLift's request for judicial notice of its Data Protection Terms but then relied upon those terms in analyzing TripleLift's intent. *Compare* MTD Order at 3 (declining to take judicial notice of the Terms) *with id.* at 5 (relying upon "Triple Lift's policies that require its customers (*i.e.*, sites that Plaintiff and putative class members have visited) to comply with data protection laws and ensure privacy disclosures").

Such disclosures are not proper subjects of judicial notice, as the Court found. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("extraneous evidence should not be considered in ruling on a motion to dismiss"). Judicial notice is only proper if an adjudicative fact "is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Maraldo v. Life Ins. Co. of the Sw.*, No. 11-CV-4972-YGR, 2012 U.S. Dist. LEXIS 45572, at *17 (N.D. Cal. Mar. 30, 2012) ("The Ninth Circuit has indicated that judicial notice should only be taken sparingly, with caution, and after demonstration of a 'high degree of indisputability.'"). And perhaps most importantly, to the extent an adjudicative fact may be judicially noticed, it cannot be offered for the truth of the matter asserted. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1029-30 (C.D. Cal. 2015).

Because neither the SAC nor the operative SAC reference, include or mention TripleLift's Data Protection Terms, they cannot be relied upon at the pleading stage to establish TripleLift's intent, or lack thereof, and should not be taken into consideration on TripleLift's Motion.

### 2. Plaintiff's Allegations Demonstrate Intentionality

Even if those Data Protection Terms were properly before the Court (though they are not), Plaintiff has sufficiently alleged that the tracking mechanisms TripleLift employs operate without the required consent from consumers. As the SAC sets forth:

> TripleLift's tracking technologies are designed to begin collecting user data immediately upon page load. When a user's browser loads a webpage containing TripleLift's code, TripleLift's bidder tags, tracking pixels, and RTB endpoints execute automatically and cause the browser to transmit the user's IP address, URLs, search terms, referrers, device information, browsing data, and other personal information to TripleLift's servers. This interception occurs before the user has any opportunity to review a privacy policy, provide consent, or take any action to control the collection of their data.

SAC ¶ 37. TripleLift thus acts with knowledge that it is receiving sensitive consumer data without consent; indeed, before there is even any opportunity *to* consent. *See also id.* at ¶ 36 ("TripleLift's interception of users' communications was the predictable and intended result of the ordinary operation of its tracking technologies, which were designed to receive and process those communications *in real time* for TripleLift's advertising and monetization purposes") (emphasis added). Because this process is instantaneous, TripleLift knew, or should have known, that the information was being shared in the absence of consent, regardless of what its Data Protection Terms say.

Moreover, with respect to any subsequently transmitted consumer data (for example, search terms entered into various pages of third-party websites), TripleLift takes no action whatsoever to confirm, verify, or audit whether these third parties are making any attempt to obtain consumer consent. SAC ¶ 39. Nor does TripleLift make any effort to confirm that data obtained and intercepted without consent does not make its way into TripleLift's hands. *Id*. ¶¶ 39-40. And it has no incentive to do so: the market for this data is massive and is the primary driver of TripleLift's revenue. ¶¶ 19, 33-34.

In finding that TripleLift did not intend to collect user data without consent, the Court relied on *Briskin v. Shopify Inc*., No. 21-cv-06269-PJH, 2026 U.S. Dist. LEXIS 11317, at *16 (N.D. Cal. Jan. 21, 2026) which held, without citing any cases, that a defendant's internal policies requiring its customers to obtain user consent are effectively dispositive of intent at the pleading stage. The "majority rule," however, is that "the

question of intent should be considered on a more developed record." *L.B. v. LinkedIn Corp.*, No. 5:24-cv-06832-EJD, 2025 U.S. Dist. LEXIS 193980, at *38 (N.D. Cal. Sep. 30, 2025); *see also In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1003 (N.D. Cal. 2024) (rejecting Meta's argument that "it could not have intended to receive the information at issue because its Business Tools Terms forbid developers from sending sensitive information to Meta and require that developers have all necessary rights and permissions to lawfully share whatever information they send," holding that it "cannot conclude from their mere existence that Meta and developers intended to or did comply with the terms rather than deviating from them to their mutual benefit"); *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 U.S. Dist. LEXIS 140287, at *23-24 (N.D. Cal. July 22, 2025) ("while Meta and Google may instruct developers not to send protected health information, if, once received, Meta and Google make no effort to prevent the uploading of that information into their data repositories, take no steps to filter it out once the data is uploaded to their servers, or simply proceed to monetize that information knowing developers were sending sensitive health information in violation of instructions against it, a jury may find such acts indicative of intent"); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 U.S. Dist. LEXIS 179885 (N.D. Cal. Oct. 2, 2024) ("What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record."); *Gladstone v. Amazon Web Servs., Inc.*, 739 F.Supp.3d 846, 859–60 (W.D. Wash. 2024) (finding intent adequately pled where the defendant's technology was "designed for the purpose of recording and analyzing communications" and holding that a contractual catch-all provision requiring customers to comply with the law was insufficient to negate intent).

//

The other case TripleLift relies upon, *Doe v. Google LLC*, 741 F.Supp.3d 828 (N.D. Cal. 2024) ("*Doe I*"), is distinguishable. There, "the complaint acknowledge[d] that Google repeatedly told developers not to send personally identifiable information through use of its source code." *Id.* at 840. And "for health care providers specifically, Google warned that they must not use its source code in ways that would result in HIPAA-covered information being sent to Google." *Id.* The court concluded that "[t]he takeaway from these allegations is that Google purposefully acted so as *not* to receive any personal health information." *Id.* (emphasis in original).

Nothing in the SAC suggests that TripleLift took any affirmative action to instruct any of these third-party websites not to send data that was obtained without consent, and while TripleLift points to its Data Protection Terms – which are not properly before the Court in the first place – there is no indication that TripleLift shared those Terms with *anyone*, or took any steps to ensure that third parties were even aware of, let alone complying with, those Terms.

Similarly, in *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL, 2026 U.S. Dist. LEXIS 5762 (N.D. Cal. Jan. 12, 2026), the court concluded, in dismissing the plaintiff's CDAFA count, that the allegations failed to "raise a plausible inference that Meta knew the third-party app developers had not sought permission from the users to access the location data at issue." *Id.* at *12. Because Plaintiff has alleged that TripleLift intercepts, for example, consumers' browsing data and URLs visited "before the user has any opportunity to review a privacy policy, provide consent, or take any action to control the collection of their data," SAC ¶ 37, it is reasonable to infer that TripleLift was aware this data was being transmitted without permission.

The Court should therefore conclude, drawing all reasonable inferences in favor of Plaintiff rather than TripleLift, and in line with *LinkedIn Corp*; *In re Meta Pixel Tax Filing Cases*; *GoodRx Holdings, Inc*; and *Doe v. Meta Platforms, Inc*, among others, that Plaintiff has adequately alleged that TripleLift acted with the requisite intent under CIPA and the CDAFA. This is *especially* true given the denial of TripleLift's request for

judicial notice.

### B. TripleLift "Acquired the Contents" of Plaintiff's Communications

The SAC details how TripleLift intercepted the contents of Plaintiff's and Class Members' communications, sufficiently stating a CIPA claim. "Content is defined to 'include[] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown v. Google LLC*, 685 F.Supp.3d 909, 935 (N.D. Cal. 2023). This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA"); *Krzyzek*, 817 F.Supp.3d at 867 (URLs can "reveal website users' personal interests, queries, and habits, particularly when aggregated into comprehensive user profiles," as TripleLift does); *Semien v. Pubmatic Inc.*, No. 25-cv-03164-SI, 2026 U.S. Dist. LEXIS 15196, at *25 (N.D. Cal. Jan. 27, 2026) ("Plaintiffs have adequately alleged that PubMatic intercepts not only the broader websites visited, but also URLS including specific articles or specific pages the plaintiffs viewed"). Here, Plaintiff alleges that Defendant collects the specific web pages they visit and read, which therefore disclose personal interests, queries, and habits. ¶ 29 (referring to health.com).

With respect to her own searches, Plaintiff alleges that, unlike generic stock symbols or some random string of numbers or letters, she visited www.prevention.com and entered terms into the search bar that related to her own personal health conditions, and the articles she read as a result. ¶ 42. Terms and web pages relating directly to one's own health unquestionably reveal that individual's "interests and queries" regarding one of the most sensitive aspects of a person's life. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. 2023) (even entries *not* relating to personal medical information can constitute contents of a communication, reinforcing that entries that *do* pertain to such information, as Plaintiff's do here, undoubtedly comprise "contents"); *Hassid v. Alex and Ani, LLC*, 816 F.Supp.3d 1196, 1200-1201 (C.D. Cal. Jan. 20, 2026)

(finding Article III standing where defendant installed third-party software that collected users' device and browser information, geographic information, referral information, and URL information, in addition to scanning websites for identifying information).

The SAC also alleges that TripleLift's tracking technologies collect browsing and behavioral information across websites and that through syncing, users are de-anonymized. *See* ¶¶ 23-24. Plaintiff thus plausibly alleges that Defendant intercepted the "contents" of users' communications. *Selby v. Sovrn Holdings, Inc.,* 2025 U.S. Dist. LEXIS 205538, at *9 (finding "contents" intercepted where "Plaintiffs have alleged that, among other things, [defendant] collects 'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed").

To the extent TripleLift argues that Plaintiff has not properly set forth the details of how this data is transmitted, MTD at 19, that information is solely within the possession of TripleLift and can only be fully fleshed out through discovery. Nevertheless, Plaintiff has provided extensive allegations as to how the surveillance system functions. *See, e.g.,* ¶ 16 ("When an RTB auction for digital-advertising space occurs, TripleLift sends "bid requests" to multiple DSPs. That request includes information such as the user's IP address, device information, geolocation, browsing context, and available identifiers. The DSPs will use this information to calculate whether and how much to bid in the auction. Each DSP receives this data regardless of whether they bid or win, transforming the RTB system into a massive data collection network"); ¶ 17 ("TripleLift's presence on publishers' pages typically takes the form of small pieces of code that include tags and pixels. When those tags or pixels run, the user's browser automatically makes network calls to TripleLift's servers, sending standard request headers (IP address, user-agent, referrer) and additional signals the code collects (page context, device/browser signals, and any readable identifiers"). These allegations sufficiently set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which is all that is required at this stage, without the benefit of any discovery.

//

### C. Plaintiff's Communications Were Intercepted While in Transit

Contrary to TripleLift's contentions, Plaintiff alleges that the tracking technologies ***do*** intercept communications contemporaneously while they are in transit since the trackers cause users' browsers to simultaneously transmit the contents of their communications to TripleLift's servers. ¶ 57. Courts routinely find that online trackers like those at issue here intercept communications in transit. *See, e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F.Supp.3d 969, 978 (C.D. Cal. 2023); *Doe v. Call-On Doc, Inc.,* No. 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269, at *34-35 (S.D. Cal. June 13, 2025) (finding interceptions occurred in transit where plaintiff alleged that Google Analytics' tracking code and TikTok Pixel sent simultaneous transmissions of her information and intercepted plaintiff's information in real time); *Adair v. Aylo USA Inc.*, No. 2:25-cv-06351-WLH-KS, 2026 U.S. Dist. LEXIS 111114, at *17-23 (C.D. Cal. May 19, 2026) (discussing and collecting cases regarding the 'in-transit' element and sustaining similar allegations to those here, distinguishing cases with conclusory or unsupported claims of in-transit interception).

Regardless, on a motion to dismiss, a plaintiff is not required to allege how and when their communications are captured, and "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny Opco, LLC,* No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *20 (S.D. Cal. Oct. 24, 2023)*; see also*, *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 841 (N.D. Cal. 2014) ("While Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not during transmission, that issue [] would be better addressed as part of a motion for summary judgment with a more developed factual record.").

Here, Plaintiff has provided factual allegations supporting the claim that user data is intercepted in transit, rather than simply parroting statutory language. *See, e.g.* ¶ 37 ("TripleLift's tracking technologies are designed to begin collecting user data

immediately upon page load. When a user's browser loads a webpage containing TripleLift's code, TripleLift's bidder tags, tracking pixels, and RTB endpoints execute automatically and cause the browser to transmit the user's IP address, URLs, search terms, referrers, device information, browsing data, and other personal information to TripleLift's servers"). Nothing more is required at this stage.

### D. Plaintiff States a CDAFA Claim

TripleLift makes three arguments regarding the CDAFA in support of its Motion, none of which should be sustained.

First, it suggests that Plaintiff does not properly allege that the intrusion was "without permission." Consistent with Plaintiff's allegations of "no permission," which this Court must take as true, courts routinely find that unauthorized installation of tracking technologies give rise to CDAFA claims. *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1035, 1047-49 (S.D. Cal. Jul. 27, 2023) (sustaining CDAFA claim where the defendant embedded its tracking code into third-party apps, which secretly collected app users' data, finding that such tracking was done "without permission"); *Meta Healthcare Pixel Litig.*, 713 F.Supp.3d 650, 656 (N.D. Cal. 2024) (sustaining CDAFA claim when defendant surreptitiously placed a cookie on the plaintiffs' computers, which caused the computers to redirect the plaintiffs' data to the defendant).

Second, because Plaintiff's CDAFA claims arise from TripleLift's unauthorized tracking, not from fraud, a heightened pleading standard for fraud is inapplicable. Even if it were, as summarized above, Plaintiff's detailed factual allegations are more than sufficient to "identif[y] the particular alleged wrongs" and provide "sufficient notice of the conduct at issue." *State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.*, 90 Cal.App.5th 1119, 1138 (2023). For example, Plaintiff describes TripleLift's tracking mechanisms, the installation of cookies on users' computers, the creation of digital profiles and the ability to identify users through syncing. With respect to Plaintiff specifically, she alleges that she used two websites on which ***TripleLift does not dispute the trackers were installed***. Plaintiff alleges that she "used the search bar [on

prevention.com] to search for information regarding her personal health and read articles on the website" and that her "personal information, including her IP address, device information, browsing activity, and persistent user identifier, was intercepted and collected by TripleLift." ¶ 36. Such allegations are routinely upheld in pen register and other pixel tracking cases.

Lastly, Plaintiff adequately alleges compensatory damages, including by explaining how TripleLift "was unjustly enriched and profited from the data taken" by using Plaintiff's and Class Members' personally identifying information obtained in violation of CDAFA to maximize advertising revenue, which damages courts have repeatedly upheld. ¶ 68. As the court in *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 149750, at *8 (N.D. Cal. Aug. 4, 2025) explained with respect to online trackers, "Plaintiffs have a 'stake in the profits garnered' unjustly from their data [… that] 'exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.'" (finding unjust profit from the use of the plaintiffs' private personal information constitutes "damage or loss" within the meaning of CDAFA).

**E. The Rule of Lenity Does not Bar Any of Plaintiff's Claims**

Under the rule of lenity, "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *See People v. Nuckles*, 56 Cal. 4th 601, 611, 155 Cal. Rptr. 3d 374, 298 P.3d 867 (2013) (citation omitted). But the rule "does not apply every time there are two or more reasonable interpretations of a penal statute. On the contrary, this principle applies only when two reasonable interpretations of the same provision stand in relative equipoise." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202, 276 Cal. Rptr. 3d 746, 483 P.3d 869 (2021) (citations and quotation marks omitted). In other words, the rule applies only where "resolution of the statute's ambiguities in a convincing manner is impracticable." *See People v. Avery*, 27 Cal. 4th 49, 58, 115 Cal. Rptr. 2d 403, 38 P.3d 1 (2002).

TripleLift's rule of lenity argument fails because the rule applies "only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." *People v. Superior Ct. of Riverside Cnty.*, 81 Cal. App. 5th 851, 886 (2022). There is no such egregious ambiguity here as courts have found again and again and again that CIPA and the CDAFA apply to claims nearly identical to those asserted here, and have specifically declined to apply the rule of lenity. *Riganian*, 791 F.Supp.3d at 1094 (rejecting rule of lenity argument as applied to CIPA); *Garon v. Keleops USA, Inc.*, No. 25-cv-02124-DMR, 2025 U.S. Dist. LEXIS 170745, at *15 (N.D. Cal. Sep. 2, 2025) (same); *Brown*, 685 F.Supp.3d at 940 (same, in context of CDAFA).

**F. To The Extent The Court Finds Her Pleading Insufficient, Plaintiff Should Be Permitted Leave To Amend**

TripleLift's Motion should be denied for the reasons stated herein. Should the Court grant the Motion, however, Plaintiff respectfully requests leave to amend. The Ninth Circuit has consistently granted plaintiffs leave to amend regardless of multiple previously amended pleadings. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend even though the plaintiff had previously amended his pleading three times). Furthermore, the Ninth Circuit emphasizes that "[u]nder futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts"). This is especially true here where the Court did not have occasion to address all of Plaintiff's allegations when it dismissed the § 631 and CDAFA claims on intent grounds.

If the Court deems any of the claims inadequately pleaded, Plaintiff requests leave to amend.

Dated: June 17, 2026

Respectfully submitted,

**MILLER SHAH LLP**

By: */s/ James C. Shah*
James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Kyle Shamberg (*pro hac vice*)
**CARROLL SHAMBERG, LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
Telephone: (872) 215-6205

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,732 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 17, 2026

*/s/ Kolin C. Tang*
Kolin C. Tang