Nicola C. Menaldo (*pro hac vice*)
NMenaldo@perkinscoie.com
Anna Mouw Thompson (*pro hac vice*)
AnnaThompson@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Triple Lift, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHARON MANIER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TRIPLE LIFT, INC.,

Defendant.

Case No. 5:25-cv-03223-SSS-DTB

**TRIPLE LIFT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

Date: August 7, 2026
Time: 2:00 p.m.
Courtroom 2

Judge: Hon. Sunshine S. Sykes

# I. INTRODUCTION

In this action, Plaintiff seeks to transform TripleLift's commonplace advertising technologies into violations of two California criminal statutes, CIPA and CDAFA. Because those statutes impose criminal penalties, they require heightened levels of intent, which the Legislature deemed necessary to distinguish ordinary commercial conduct from the narrow category of criminalized conduct. In dismissing Plaintiff's original pleading, this Court relied on a growing body of authority to correctly find that Plaintiff failed to plausibly allege that TripleLift acted with that heightened intent. *See Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *3 (C.D. Cal. Apr. 15, 2026). Plaintiff's SAC—which adds just six new paragraphs, many pleaded "upon information and belief"—does nothing to cure that fundamental defect. The Court should dismiss the CIPA and CDAFA claims again.

The CIPA and CDAFA claims also fail for several independent reasons unrelated to intent. Plaintiff's CIPA claim—premised on vague and conclusory allegations about search terms—fails because Plaintiff does not plausibly allege that TripleLift collected the "contents" of her communications "in transit." Her CDAFA claim fails for lack of statutory standing, for failure to plead her claim with particularity, and because TripleLift has not plausibly accessed Plaintiff's devices "without permission." The Court should dismiss both claims again, with prejudice.

# II. ARGUMENT

## A. Plaintiff still has not pleaded the intent element of her statutory claims.

### 1. The SAC does not plausibly allege intent.

The SAC adds six paragraphs—many pleaded "upon information and belief" (SAC ¶¶ 36–41)—in an effort to cure the deficiency this Court previously identified. That effort fails. Those new allegations remain conclusory, unsupported by well-pleaded facts, and therefore insufficient under *Iqbal*. Critically, not a single one plausibly alleges that TripleLift acted with the deliberate objective of intercepting communications without consent. Instead, Plaintiff resorts to the theory

that because TripleLift's code allegedly fires "immediately upon page load," TripleLift must have known it was receiving unconsented-to data. Opp. 6. That theory fails for several independent reasons.

*First*, Plaintiff's "page load" theory rests on conclusory statements, not well-pleaded facts. Plaintiff baldly asserts that TripleLift's technologies "execute automatically" and collect data before a user can review a privacy policy or consent. SAC ¶ 37. But she alleges no facts explaining how TripleLift's code operates, what triggers its execution, or why the ordinary timing of a webpage's loading sequence plausibly supports an inference that TripleLift deliberately sought to circumvent user consent. Those are precisely the sort of "[t]hreadbare recitals" and conclusory allegations that are "not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), especially given that many of Plaintiff's new allegations are made "upon information and belief." SAC ¶¶ 38–40.

*Second*, even setting aside that pleading failure, Plaintiff's argument still fails because it improperly dilutes CIPA's willfulness requirement. That much is clear from Plaintiff's own brief, which argues that because the "process is instantaneous, TripleLift *knew, or should have known*," that it was receiving unconsented-to data. Opp. 6 (emphasis added). But as this Court has already explained, California law makes clear that *mere knowledge* is insufficient: CIPA requires specific intent, so a defendant is not liable if it merely "understood it was deploying recording devices that might happen to record a confidential communication[.]" *See Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022) (emphasis added) (interpreting Section 632 of CIPA); *Manier*, 2026 WL 1295546, at *3. As the *Doe I* court put it, the idea that "intent only requires awareness that information is likely being transmitted" is "not the right way to think about intent" because the "operative question" is "whether the defendant acted *consciously* and *deliberately* with the goal of intercepting wire communications." *Doe I v. Google LLC*, 741 F. Supp. 3d

828, 840 (N.D. Cal. 2024) (emphasis added).[1] Plaintiff does not even attempt to meet that standard.

*Third*, even accepting the "instantaneous" allegation at face value, Plaintiff's CIPA claim still fails because the SAC does not plausibly allege that the information underlying that claim was intercepted during that brief interval in question. The SAC alleges that, upon page load, technologies may collect routine technical information such as an IP address, user-agent, referrer, and device information. SAC ¶ 37. But there is no well-pleaded allegation that Plaintiff's sensitive health-related search terms—which form the basis of her "contents" theory—were transmitted to TripleLift instantaneously upon page load. Nor could there be: search terms are generated only *after* a user affirmatively interacts with a website by typing queries into a search bar. *See* SAC ¶ 42. Thus, even if some technical data were collected before Plaintiff encountered the website's consent mechanisms, that allegation does not plausibly establish that TripleLift intended to intercept the "contents" of Plaintiff's communications, as CIPA requires. *See infra.*

**2. TripleLift's Data Protection Terms further confirm no intent.**

The Court need not consider TripleLift's Data Protection Terms to dismiss the CIPA and CDAFA claims again. But considering them—as this Court has already done—only strengthens the case for dismissal. TripleLift's policies demonstrate the opposite intent to the one Plaintiff only conclusorily alleges: they confirm that TripleLift *does not want* to receive unconsented-to data and contractually prohibits its website partners from transmitting it. *See Manier*, 2026 WL 1295546, at *3. The Court's holding on this point accords with a growing body of authority dismissing CIPA and CDAFA claims on intent grounds. *See Doe I*, 741 F. Supp. 3d at 840; *Briskin v. Shopify Inc.*, 2026 WL 161441, at *6 (N.D. Cal. Jan. 21, 2026); *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan.

[1] Plaintiff's discussion of TripleLift's financial "incentives" likewise misses the mark. Opp. 6. Deriving revenue from advertising technology is not the same as intending to receive unconsented-to data. Mot. 9–10.

12, 2026); *Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, at *1 (N.D. Cal. May 21, 2026). Those cases recognize a straightforward principle: "if we compare two hypothetical scenarios—one where [the website] obtains proper consent, and one where it doesn't—technically, [TripleLift's] 'intent' is the same in both scenarios." *Briskin*, 2026 WL 161441, at *5; *Manier*, 2026 WL 1295546, at *3. Plaintiff has no compelling rejoinder to any of these cases, and simply submits that they were wrongly decided.[2] Instead, Plaintiff claims that intent is a factual question that "should be considered on a more developed record." Opp. 7. But that does not absolve Plaintiff of her burden to allege facts that plausibly show that TripleLift acted with the requisite intent. *See Doe I*, 741 F. Supp. 3d at 841.

Nor do Plaintiff's authorities help her. They either predate *Doe*, *Briskin*, and *Tsering*, are readily distinguishable, or both. Plaintiff's opposition opens with a string of cases cited for the proposition that her allegations "mirror" those that courts have found sufficient to state privacy claims. Opp. 1–2. But not one of those cases addressed the intent argument that has already proved fatal to Plaintiff's claims here. The cases that *do* address intent—*Doe I*, *Briskin*, *Tsering*—hold that contracts requiring third parties to obtain consent negate any inference of intent.

Plaintiff next invokes *Lopez v. Apple Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. 2021) to claim that "interception may be considered intentional where a defendant is aware of the defect causing the interception but takes no remedial action." *Id.* at 684 (citation modified). But there are no plausible, non-conclusory allegations here that TripleLift was aware of a defect causing it to intercept the contents of communications without consent, and failed to take action. This case does not involve a defect at all—rather, Plaintiff alleges TripleLift's technologies worked as intended. Opp. 7. *L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) is inapposite too because the court's intent discussion was *dicta*, and the

[2] Plaintiff endeavors to distinguish *Doe I* on grounds that Google "repeatedly told developers not to send personally identifiable information[.]" Opp. 8. TripleLift's Data Protection Terms do the exact same thing by contractually requiring publishers to obtain consent before sharing data with TripleLift. *See* Dkt. 20-6.

allegations "create[d] a reasonable inference that the purpose of the [technology] is … to collect confidential data from users in violation of their privacy rights." *Id.* at *13. Plaintiff alleges the opposite here, conceding that TripleLift's purpose is "to help its clients sell advertising space on their websites." SAC ¶ 10. Similarly, in *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *8 (N.D. Cal. July 22, 2025), the court identified factual allegations—such as knowingly accepting prohibited data, failing to filter it, or deliberately monetizing it despite that knowledge—that are entirely absent here. Judge Chhabria laid out the flaws of the intent holding in *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), in a case this Court has already cited favorably. *See Doe I*, 741 F. Supp. 3d at 841. And *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024), involved contractual terms that postdated the challenged conduct.

Finding no support in the caselaw, Plaintiff pivots and asserts that the Court cannot consider TripleLift's Data Protection Terms at all, notwithstanding that it did so in dismissing her CIPA and CDAFA claims. Her argument rests entirely on the Court's partial denial of TripleLift's request for judicial notice (Opp. 5), but that ruling does not help her. Although the Court declined to take judicial notice of the terms "for their truth on issues that are disputed," it nonetheless took notice of their *existence* in dismissing Plaintiff's CIPA and CDAFA claims. *See Manier*, 2026 WL 1295546, at *2–3. That is all TripleLift asks the Court to do here.

The Court was and remains on firm ground in relying on the terms. "As a general matter, websites and their contents may be" considered on a motion to dismiss "provided that the party submits a copy of the relevant webpage to the court" (as TripleLift did here) because whether the website was in the public realm is not subject to dispute. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1053 (N.D. Cal. 2025). Consistent with that principle, courts routinely consider online documents like TripleLift's Terms at the pleading stage. *See* RJN 1–3.

Plaintiff has no response to this body of authority. Instead, she claims that

because the SAC does not "reference, include or mention TripleLift's Data Protection Terms, they cannot be relied upon[.]" Opp. 5. That argument conflates judicial notice and incorporation by reference, which are distinct doctrines. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Finally, Plaintiff's contention that the Data Protection Terms "cannot be offered for the truth of the matter asserted" (Opp. 5) attacks a strawman. TripleLift does not ask the Court to accept the policies' substantive truth. It asks only that the Court acknowledge their existence—precisely as it did in its prior order. In other words, TripleLift does not ask the Court to accept that its website partners actually comply with the Data Protection Terms in every instance. It asks only that the Court recognize that the Terms exist because that fact alone demonstrates that TripleLift did not intend to receive such data. Courts routinely draw that very distinction when taking judicial notice of publicly available online documents. *See GoodRx Holdings*, 2025 WL 2052302, at *5; *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015); *Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1075 (S.D. Cal. 2021).

**B. Plaintiff has not stated a CIPA wiretapping claim for other reasons.**

**1. Plaintiff fails to allege contents of communications.**

Plaintiff first argues that TripleLift intercepted the contents of her communications because it allegedly collected "the specific web pages [she] visit[ed] and read," which purportedly reveal her "personal interests, queries, and habits." Opp. 9. But, as the Ninth Circuit has squarely held, "webpage address[es]" are not "contents" of communications. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). It therefore makes no difference whether a specific webpage could be interpreted to "disclose personal interests." Opp. 9; *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) ("[I]nformation about personal habits and identities that Google 'infers' . . . is not 'content.'").[3]

[3] Plaintiff's assertion that "users are de-anonymized" (Opp. 10) also makes no difference because things like "'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer" are record information, not contents. *In re Zynga*, 750 F.3d at 1106.

Plaintiff's search term-based theory (Opp. 9) fares no better. *First*, Plaintiff does not plausibly allege that any intercepted search terms conveyed the contents of her communications. Although the *Zynga* court left open the possibility that, in some circumstances, URLs revealing a person's search terms could reveal the contents of a person's communications, it by no means suggested that a *bare allegation* of search term interception could withstand a motion to dismiss. 750 F.3d at 1107. To the contrary, Plaintiff's failure to identify any search term she allegedly entered—or explain how any such search conveyed the contents of her communications—is fatal. Merely asserting that she "used the search bar" is not enough. *See Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) ("Without allegations as to what . . . Plaintiff[] searched, Plaintiff[] fail[s] to plausibly allege that [TripleLift] intercepted the contents of [her] communications."); *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 901 (N.D. Cal. 2026) (similar); *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (similar).

*Second*, Plaintiff concedes that the SAC contains no allegations explaining *how* any search terms were supposedly transmitted to TripleLift. Mot. 19. The SAC describes how TripleLift's code collects "standard request headers (IP address, user-agent, referrer) and additional signals" from a user's browser. SAC ¶ 17. But nothing in that description (or anywhere else in the SAC) explains how a user's typed search queries would be redirected to TripleLift, much less why it would make any sense for such redirection to occur. Plaintiff's only response on that point is telling: rather than identify factual allegations supporting that inference, she argues that the details "can only be fully fleshed out through discovery." Opp. 10. But once again, a bald assertion that TripleLift collects search terms, "without some further factual support, is not enough to open the floodgates to discovery." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 53 (9th Cir. 2022).

**2. Plaintiff's in-transit allegations fall short.**

CIPA's in-transit requirement erects an intentionally high bar, requiring not only interception but also an attempt to "read or understand" the contents of a communication while in transit. Mot. 19–21 (collecting cases). In claiming that she cleared that bar, Plaintiff points to her assertion that TripleLift "causes [users'] browsers to simultaneously transmit the contents of those communications to TripleLift's servers . . . in real-time." SAC ¶ 57. But repeating buzzwords like "simultaneously" and "real-time" is not enough absent supporting facts—as recognized in the cases cited by both parties. *See, e.g.*, Mot. 21; *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023). Nor can Plaintiff point to anything in the SAC that establishes the second half of the "in transit" inquiry—whether TripleLift "attempt[ed] to read, or to learn the contents . . . of" Plaintiff's communications during the short in-transit window. Cal. Penal Code § 631(a). That omission, too, is fatal.

Plaintiff once again protests that this is a factual question that cannot be decided on a motion to dismiss. Opp. 14. But caselaw again refutes that position: courts routinely dismiss Section 631 claims where the complaint lacks factual allegations that the communications were read "while" "in transit." *See* Mot. 18–19 (collecting cases); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025). And Plaintiff's complaint lacks such allegations; instead, Plaintiff "merely restate[s] the statutory language, which is insufficient under the plausibility standard." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024).

**C. Plaintiff has not stated a CDAFA claim.**

The CDAFA claim fails on three additional grounds: (1) no allegations that TripleLift acted "without permission"; (2) failure to comply with Rule 9(b); and (3) lack of statutory standing. Nothing in Plaintiff's opposition rescues that claim.

On "without permission," Plaintiff cites just two cases finding that tracking

technologies sometimes can underpin CDAFA claims. But she has no response to the line of authority interpreting "without permission" consistent with CDAFA's anti-hacking purpose such that it "require[s] the defendant to act in a manner that overcomes technical or code-based barriers." *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *14 (C.D. Cal. Dec. 12, 2025) (citation modified) (collecting cases). There is no circumvention of such barriers alleged here.

As to Rule 9(b), Plaintiff claims—citing nothing—that because her claims "arise from … unauthorized tracking," Rule 9(b) does not apply. But Rule 9(b) is not concerned with the underpinning of claims: what matters is whether the claim "'sound[s] in fraud,' even if fraud is not an essential element of the cause of action." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023). Plaintiff's claims meet that standard, as evidenced by her own opposition brief, which asserts that TripleLift acted in "secret[]" and within a "clandestine network" "for commercial gain[.]" Opp. 1. And even if Rule 8 applied, Plaintiff does not allege sufficient facts: the SAC simply regurgitates the statutory language. SAC ¶¶ 63–69.

Finally, on statutory standing, Plaintiff has abandoned three of the SAC's four theories. *See* SAC ¶ 74. The only theory she defends is that TripleLift was "unjustly enriched and profited" from her data. Opp. 13. But "the profit [a] [d]efendant ma[kes] as a result of disclosing Plaintiffs' data is [not] sufficient to demonstrate a loss" under CDAFA. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). The lone case Plaintiff cites for the contrary position, *Smith v. Rack Room Shoes*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025), is an outlier. *See Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *8 (N.D. Cal. Apr. 21, 2026) (dismissing CDAFA claim and explaining that *Smith* "does not persuade the Court"). For good reason: its rationale does not withstand scrutiny because the court's holding was based on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 600 (9th Cir. 2020), which addressed "unjust profits" under *Article III standing*, not CDAFA's more exacting "loss or damage"

requirement. *See Doe*, 690 F. Supp. 3d at 1082 n.5.

### D. The rule of lenity applies.

Plaintiff does not dispute that the rule of lenity applies here, but insists that CIPA and CDAFA are not ambiguous enough to trigger the rule. Opp. 13. The case law proves otherwise. "CIPA is a total mess," and courts have struggled to "apply CIPA's already-obtuse language to new technologies." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1111 (N.D. Cal. 2025). "[I]t's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute," because "[c]ourts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability." *Id.* 1111–12. Plaintiff's response is to cherry pick cases finding CIPA applicable to similar conduct, but that misses the point: the rule of lenity does not ask whether *courts* have concluded the statute reaches certain behavior—it asks whether the *legislature* clearly proscribed that behavior, and the conflicting rulings on nearly every element of Plaintiff's claims confirms that it did not. Mot. 13–22. Faced with such uncertainty, this Court should resolve CIPA and CDAFA's many "ambiguities in favor of [the] narrower interpretation." *Id.*; *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1204–05 (Mass. 2024); *Gray v. Twitter Inc.*, 2021 WL 11086642, at *8 (W.D. Wash. Mar. 17, 2021).

### E. The CIPA and CDAFA claims should be dismissed with prejudice.

Plaintiff should not receive another opportunity to replead her CIPA and CDAFA claims. A district court's discretion to deny leave to amend is "particularly broad" where, as here, "the plaintiff has previously amended." *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Further amendment here would be futile. This Court identified the deficiencies in Plaintiff's CIPA and CDAFA claims and granted leave to amend so she could attempt to cure them. Plaintiff failed to take advantage of that opportunity.

## III. CONCLUSION

The CIPA and CDAFA claims should be dismissed with prejudice.

Dated: July 9, 2026

**PERKINS COIE LLP**

By: *<u>/s/ Nicola C. Menaldo</u>*
Nicola C. Menaldo (*pro hac vice*)
NMenaldo@perkinscoie.com
Anna Mouw Thompson (*pro hac vice*)
AnnaThompson@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Colin Lubelczyk (*pro hac vice*)
clubelczyk@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street 10th Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2162
Facsimile: 503.727.2222

Attorneys for Defendant Triple Lift, Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Triple Lift, Inc., certifies that this brief contains 3,451 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 9, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*
Nicola C. Menaldo (*pro hac vice*)

Attorneys for Defendant Triple Lift, Inc.